JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Tammie D. Brown, As Administrator of the Estate of Rodney Brown

**DEFENDANTS**
Travelers Home & Marine Insurance Company d/b/a a/k/a Travelers

**(b)** County of Residence of First Listed Plaintiff   Berks, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hartford, CT
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christian J. Hoey, Esq./ Christian Hoey, Esquire, LLC
50 Darby Road, Paoli, PA 19301
(610) 647-5151

Attorneys *(If Known)*
Brooks R. Foland Esquire, Allison L. Krupp, Esq.
Marshall Dennehey Warner Coleman & Goggin (717) 651-3714
100 Corporate Center Drive, Ste. 201 Camp Hill, PA 17011

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. 1332, 1441, and 1446(b)

Brief description of cause:
Declaratory Relief, Breach of Contract and Bad Faith

## VII. REQUESTED IN COMPLAINT:
- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

NOV 27 2019

DATE
11/26/2019

SIGNATURE OF ATTORNEY OF RECORD
*Brooks R. Foland*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19    5600

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Tammie D. Brown, as Administratrix of the Estate of Rodney Brown  352 Cassidy Court, Blandon, PA 19510

Address of Defendant: Travelers Home & Marine Insurance Company, d/b/a a/k/a, Travelers One Tower Square, Hartford, Connecticut, 06183

Place of Accident, Incident or Transaction: _____ Insurance Policy issued to Plaintiff in Berks County, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/26/2019    _____ Must sign here _____    70102
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.  *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.  *Diversity Jurisdiction Cases:***

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☑ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Brooks R. Foland, Esq. _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

NOV 27 2019

DATE: 11/26/2019    _____ Sign here if applicable _____    70102
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Tammie L. Brown, Administratrix of the   :            CIVIL ACTION

Estate of Rodney Brown                   :

              v.           :

Travelers Home & Marins Insurance    :        19     5600

Company d/b/a a/k/a Travelers       :      NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)    Habeas Corpus-Cases brought under 28 U.S.C. §2241through §2255.                 ( )

(b)    Social Security-Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.           ( )

(c)    Arbitration-Cases require to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d)    Asbestos-Cases involving claims for personal injury or property damage from exposure to asbestos.                                      ( )

(e)    Special Management-Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                  ( )

(f)    Standard Management--Cases that do not fall into any one of the other tracks.          (x)

| | | |
|---|---|---|
| 11/26/2019 | Brooks R. Foland, Esquire | Defendant Travelers |
| Date | Attorney-at-law | Attorney for |

| | | |
|---|---|---|
| 717-651-3714 | 717-651-3707 | brfoland@mdwcg.com |
| Telephone | FAX Number | E-Mail Address |

NOV 27 2019

(Civ. 660) 10/02



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Tammie D. Brown, As Administratrix of    :
the Estate of Rodney Brown           :
        Plaintiff             :
                             :
        v.                  :
                             :
Travelers Home & Marine Insurance     :
Company d/b/a a/k/a, Travelers       :
        Defendant

Docket No.   19    5600

JURY TRIAL DEMANDED

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Defendant Travelers Personal Security Insurance Company ("Travelers") (improperly named as "Travelers Home & Marine Insurance Company, d/b/a a/k/a, Travelers") hereby files a Notice of Removal of this case from the Court of Common Pleas of Philadelphia County, Pennsylvania, where it is now pending, to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(b), and in support thereof, avers as follows:

1.     Plaintiff Tammie D. Brown, as Administratrix of the Estate of Rodney Brown ("Plaintiff") commenced this action by filing a Complaint on August 20, 2019, in the Court of Common Pleas of Philadelphia County, docketed at Case ID No. 190802259.  A copy of the Complaint is attached hereto and identified as Exhibit A.

2.     On September 18, 2019, Plaintiff filed a Praecipe to Reinstate Complaint and Praecipe to Substitute/Attach Verification.  Copies of the Praecipes are attached hereto and identified as Exhibits B and C.

3.     On October 22, 2019, Plaintiff filed another Praecipe to Reinstate Complaint.  A copy of the Praecipe is attached hereto and identified as Exhibit D.

4.      Travelers was served with the Complaint, via certified mail, on November 4, 2019. A copy of the letter from Plaintiff's counsel to Travelers enclosing the Complaint, which was stamped in by Travelers on November 4, 2019, is attached hereto and identified as Exhibit E.

5.      On November 25, 2019, the undersigned counsel entered their appearance on behalf of Travelers. True and correct copies of counsel's entries of appearance are attached hereto and identified as Exhibits F and G.

6.      In her Complaint, Plaintiff purports to set forth the following causes of action against Travelers: Count I: Declaratory Relief; Count II: Breach of Contract; and Count III: Bad Faith – Common Law and Statutory. Exhibit A.

7.      This Notice of Removal is timely, in accordance with 28 U.S.C. § 1441 and 1446(b).

8.      Per the Complaint, Plaintiff resides at 352 Cassidy Court, Blandon, PA 19510. Exhibit A.

9.      Therefore, upon information and belief, Plaintiff is a citizen of the Commonwealth of Pennsylvania.

10.     Travelers is a corporation organized and existing under the laws of the state of Connecticut, with a principle place of business located at One Tower Square, Hartford, Connecticut, 06183.

11.     Travelers is the sole defendant in this case.

12.     Based upon the allegations set forth in the Complaint, the amount in controversy in this action is in excess of $75,000.00, exclusive of interest and costs.

13.     With respect to Count I: Declaratory Relief, Plaintiff seeks a declaration from the Court that she is entitled to stacked underinsured motorist benefits under the Travelers Policy and,

2

in the body of Count I, states: "The Defendant, Travelers, is required to make stacked underinsured motorist coverage of up to an additional $50,000 in stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, for the additional two (2) vehicles insured at the time of the accident."[1]  Exhibit A at para. 64.

14.    With respect to Count II: Breach of Contract, Plaintiff asks the court to award her an additional $50,000 in stacked underinsured motorist benefits.  Exhibit A at Count II.

15.    With respect to Count III: Bad Faith – Common Law and Statutory, Plaintiff seeks an award of "actual damages, consequential damages, interest, counsel fees, costs and punitive damages."[2]  Exhibit A at Count III.

16.    As such, this Honorable Court has jurisdiction, pursuant to the provisions of 28 U.S.C. § 1332, since there exists diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

17.    The present lawsuit is accordingly removable from State Court to this Court, pursuant to 28 U.S.C. § 1441 and § 1446.

18.    This Notice of removal has been filed within thirty (30) days after Travelers received a copy of the Complaint, and thus, removal is appropriate under 28 U.S.C. § 1446(b).

19.    Pursuant to the requirements of 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Travelers are attached hereto. *See* Exhibits A through G.

---

[1] Travelers is in no way conceding that that these types of damages are warranted or permitted, but is referencing the allegations to illustrate that the amount in controversy exceeds $75,000.
[2] Again, Travelers is in no way conceding that Plaintiff has set forth a viable bad faith claim, or that she is entitled to these types of damages, or any damages at all, but is merely referencing the allegations in the Complaint to illustrate that the amount in controversy exceeds $75,000.

20.     Written notice of filing this Notice of Removal has been given to Plaintiff, in accordance with 28 U.S.C. § 1446(d), as noted on the attached Certificate of Service.

21.     Promptly after filing with this Honorable Court, and the assignment of a civil action number, a copy of this Notice of Removal will be filed with the Court of Common Pleas of Philadelphia County, Pennsylvania, in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Travelers Personal Security Insurance Company (improperly named as "Travelers Home & Marine Insurance Company, d/b/a a/k/a, Travelers") respectfully requests that this action be removed from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By:     _Brooks R. Foland_
Brooks R. Foland, Esquire
PA Attorney I.D. No. 70102
Allison L. Krupp, Esquire
PA Attorney I.D. No. 307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
Telephone: (717) 651-3714
Email:brfoland@mdwcg.com
*Attorney for Defendant*

Dated: _____November 26, 2019_____

4

CHRISTIAN J. HOEY, ESQUIRE
Attorney I.D. No. 70999
50 Darby Road
Paoli, PA 19301

*Filed and Attested by the Office of Judicial Records 20 AUG 2019 10:53 am E. KALOGRIAS*

Attorney for Plaintiff

| | | |
|---|---|---|
| TAMMIE D. BROWN, AS | : | COURT OF COMMON PLEAS |
| ADMINISTRATRIX OF THE | : | |
| ESTATE OF RODNEY BROWN | : | PHILADELPHIA COUNTY, |
| 352 Cassidy Court | : | PENNSYLVANIA |
| Blandon, PA 19510 | : | |
| Plaintiff, | : | AUGUST TERM, 2019 |
| | : | |
| | : | |
| v. | : | |
| | : | No. |
| TRAVELERS HOME & MARINE | : | |
| INSURANCE COMPANY, d/b/a | : | |
| a/k/a, TRAVELERS | : | |
| 3 Benjamin Franklin Parkway | : | |
| Philadelphia, PA 19102 | : | |

## CIVIL ACTION – COMPLAINT

### Parties

1.      The present action seeks declaratory relief with respect to the right, contractual underinsured motorist damages and extra-contractual bad faith damages on behalf of the individual plaintiff and on behalf of a class of similarly situated persons in connection with claims arising from an January 5, 2018 motor vehicle accident.

2.      The Plaintiff, Tammie D. Brown, is the duly appointed Administrator of the Estate of Rodney Brown, Deceased.   A true and correct copy of the Order of the Court appointing Tammie D. Brown as Administrator of the Estate of Rodney Brown is attached and marked Exhibit "A".

3.      The Defendant, Travelers Home & Marine Insurance Company ("Travelers"), is an insurance company organized and existing in the Commonwealth of Pennsylvania with its principal place of business at 3 Benjamin Franklin Parkway, Philadelphia, Pennsylvania 19102.



1

4.     The Defendant, Travelers, regularly and routinely conducts business in the City and County of Philadelphia.

## Insurance Coverage

5.     At all times material hereto, there existed, in full force and effect, an Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown, 352 Cassidy Court, Blandon, Pennsylvania 19510 providing coverage in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. A true and correct copy of the Policy is attached hereto and marked Exhibit "B".

6.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown provided $50,000.00/$100,000.00 in underinsured motorist coverage for two (2) separate motor vehicles at the time of the accident.

7.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown provided coverage for the following motor vehicles:

      (a)     2013 Kia Sorento LX

      (b)     2005 Dodge Dakota SLT

See Exhibit "B".

8.     At all times material hereto, the decedent, Rodney Brown, resided with Tammie D. Brown, his wife.

## Accident

9.     On January 5, 2018, the decedent, Rodney Brown, was the occupant of a motor vehicle operated by himself, which was involved in a serious motor vehicle accident.

2

10.     At the time of the accident, David Zalonka disregarded a steady red light and collided with Rodney Brown, resulting in severe bodily injuries to Rodney Brown, deceased, causing conscious pain and suffering, economic losses and death.

11.     The decedent, Rodney Brown, sustained fatal injuries in the accident.

12.     The January 5, 2018 motor vehicle accident was the result of the negligence and carelessness of David Zalonka in the operation of his motor vehicle.

### Tort Claim

13.     At the time of the accident, there was one (1) policy in effect which provided liability coverage for the vehicle being operated by David Zalonka, namely: (a) a policy of insurance issued by Esurance Insurance Company ("Esurance") to David Zalonka in the amount of $15,000/30,000.00.

14.     Following the motor vehicle accident, Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, made claim upon the Esurance Insurance Company for recovery of damages in tort.

15.     Following the receipt of the claims for damages in tort, Esurance tendered to the vehicle occupant and/or their representatives the liability limits of coverage under the policies of insurance providing liability coverage for the vehicle being operated by David Zalonka at the time of the accident.

16.     The liability limits of coverage under the policies of insurance issued by Esurance paid to the Plaintiff are insufficient to provide full compensation to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, for the fatal injuries by the decedent, Rodney Brown, in the January 5, 2018, motor vehicle accident.

Case ID: 190802259

**Underinsured Motorist Claim**

17.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, thereafter made claim against the Defendant, Travelers, seeking recovery of underinsured motorist benefits under the Automobile Insurance Policy.

18.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, maintained the position that she was entitled to recover the stacked limit of underinsured motorist coverage for the two (2) vehicles insured under the policy at the time of the accident, namely $100,000.00.

19.     The Defendant, Travelers, contended that the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, was only entitled to recover the unstacked $50,000.00 limit of underinsured motorist coverage under the Automobile Policy.

20.     The Defendant, Travelers, tendered and paid to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, the $50,000.00 unstacked limit of underinsured motorist coverage without prejudice to the right of the plaintiff to pursue: (a) claims for additional, stacked underinsured motorist benefits; and (b) claims for extra-contractual bad faith damages.

**Stacking of UIM Coverage**

21.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown was renewed on originally issued effective June 9, 2017, and effective through January 7, 2018.

22.     At the time of the inception of the Automobile Policy, the first named insured, Tammie D. Brown, did sign a Waiver of Stacking of Underinsured Motorist Coverage Limits on June 21, 2002.  (Please see Exhibit "C" attached hereto).

4

23.     Following the signing of the Waiver of Stacking of Underinsured Motorist Coverage Limits, Rodney Brown and Tammie D. Brown had other vehicles added to the Travelers Automobile Policy as an insured vehicles.

24.     With the addition of vehicles to the Automobile Policy, the Defendant, Travelers, did not obtain additional Waivers of Stacking of Underinsured Motorist Coverage Limits from the named insured, Rodney Brown and Tammie D. Brown, for each additional vehicle.

25.     With the addition of vehicles to the Automobile Policy, Rodney Brown and Tammie D. Brown did not sign additional Waivers of Stacking of Underinsured Motorist Coverage Limits for each additional vehicle.

26.     In particular the Defendant, Travelers, did not obtain a new stacking waiver with the addition of the 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT to the Automobile Policy.

27.     The 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT was added to the Automobile Policy by endorsement, namely the issuance of Amended Declarations Pages.

28.     The 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT was not added to the Automobile Policy by operation of any newly acquired vehicle clause.

29.     The failure of the Defendant, Travelers, to secure new Waivers of Stacking with the addition of the 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT to the Automobile Policy requires that the Defendant, Travelers, make stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question for the fatal injuries sustained in the accident.

Case ID: 190802259

30.     The Defendant, Travelers, has wrongfully, willfully and wantonly refused to provide stacked underinsured motorist coverage to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

31.     Section 1738(a) of the Pennsylvania Motor Vehicle Financial Responsibility Law provides:

> (a) Limit for each vehicle.- When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limits for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

75 Pa.C.S.A. § 1738(a).

32.     Section 1738(b) Pennsylvania Motor Vehicle Financial Responsibility Law provides:

> (b) Waiver.- Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking or uninsured or underinsured coverage in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

75 Pa.C.S.A. § 1738(b).

33.     Section 1738(c) of the Pennsylvania Motor Vehicle Financial Responsibility Law provides:

> (c) More than one vehicle.- Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase as described coverage as described in subsection (b). The premiums for an insured who exercise such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738(c).

34.     The Pennsylvania Courts have held that the addition of a new vehicle to an unstacked  policy by endorsement and/or issuance of Amended Declarations Pages requires that a

6

new Waiver of Stacking be obtained from the named insured in order for the Waiver of Stacking to be valid.  See <u>Sackett v. Nationwide Mutual Insurance Company</u> ("Sackett I") 919 A.2d 194 (Pa. 2007); <u>Sackett v. Nationwide Mutual Insurance Company</u> ("Sackett II") 940 A.2d 329 (Pa. 2007); <u>Sackett v. Nationwide Mutual Insurance Company</u> ("Sackett III") 4 A.3d 637 (Pa. Super. 2010).

35.     Therefore, in Pennsylvania, the addition of a new vehicle to an existing unstacked policy by way of endorsement and/or issuance of Amended Declarations Pages requires that a new Waiver of Stacking be obtained in order to effectuate a valid waiver of stacking of uninsured and underinsured motorist coverages.

36.     Since the Defendant, Travelers, failed to secure additional Waivers of Stacking with the addition of a new vehicle to the existing unstacked Automobile Policy by endorsement and/or issuance of Amended Declarations Pages, the Defendant, Travelers, is required to make available stacked underinsured motorist benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question.

37.     The Defendant, Travelers, is required to make stacked underinsured motorist coverage up to an additional $50,000.00 available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

38.     The refusal of the Defendant, Travelers, to make stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is unlawful, illegal and in wanton and willful disregard of the rights of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

## COUNT I
### (Declaratory Relief)

7

39.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, hereby incorporates by reference the foregoing Paragraphs 1 through 38 of this Complaint as though same were fully set forth herein.

40.     At all times material hereto, there existed, in full force and effect, an Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown, 352 Cassidy Court, Blandon, Pennsylvania 19510 providing coverage in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. A true and correct copy of the Policy is attached hereto and marked Exhibit "B".

41.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown provided $50,000.00/$100,000.00 in underinsured motorist coverage for two (2) separate motor vehicles at the time of the accident.

42.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown provided coverage for the following motor vehicles:

(a)     2013 Kia Sorento LX

(b)     2005 Dodge Dakota SLT

See Exhibit "B".

43.     At all times material hereto, the decedent, Rodney Brown, resided with Tammie D. Brown, his wife.

44.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown was originally issued effective June 21, 2002.

45.     At the time of the inception of the Automobile Policy, the first named insured, Tammie D. Brown, did sign a Waiver of Stacking of Underinsured Motorist Coverage Limits.

**8**

46.     Following the signing of the Waiver of Stacking of Underinsured Motorist Coverage Limits, Rodney Brown and Tammie D. Brown had other vehicles added to his Automobile Policy as insured vehicles.

47.     With the addition of vehicles to the Automobile Policy, the Defendant, Travelers, did not obtain additional Waivers of Stacking of Underinsured Motorist Coverage Limits from the named insured, Rodney Brown and Tammie D. Brown, for each additional vehicle.

48.     With the addition of vehicles to the Automobile Policy, Rodney Brown and Tammie D. Brown did not sign any additional Waivers of Stacking of Underinsured Motorist Coverage Limits for each additional vehicle.

49.     In particular, the Defendant, Travelers, did not obtain a new stacking waiver with the addition of the 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT to the Automobile Policy.

50.     In particular, Tammie D. Brown did not sign any additional Waiver of Stacking of Underinsured Motorist Coverage Limits following the addition of the 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT to the Automobile Policy.

51.     The 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT was added to the Automobile Policy by endorsement namely the issuance of Amended Declarations Pages.

52.     The 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT was not added to the Automobile Policy by operation of any newly acquired vehicle clause.

53.     The failure of the Defendant, Travelers, to secure new Waivers of Stacking with the addition of the 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT to the Automobile Policy requires that the Defendant, Travelers, to make stacked underinsured motorist coverage available to

the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under

the Automobile Policy in question for the fatal injuries sustained in the accident.

54.     The Defendant, Travelers, has wrongfully, willfully and wantonly refused to provide

stacked underinsured motorist coverage to the Plaintiff, Tammie D. Brown, Administrator of the

Estate of Rodney Brown, Deceased.

55.     Section 1738(a) of the Pennsylvania Motor Vehicle Financial Responsibility Law

provides:

> (a) Limit for each vehicle.- When more than one vehicle is insured under one or
> more policies providing uninsured or underinsured motorist coverage, the stated
> limits for uninsured or underinsured coverage shall apply separately to each
> vehicle so insured. The limits of coverage available under this subchapter for an
> insured shall be the sum of the limits for each motor vehicle as to which the
> injured person is an insured.

75 Pa.C.S.A. § 1738(a).

56.     Section 1738(b) Pennsylvania Motor Vehicle Financial Responsibility Law provides:

> (b) Waiver.- Notwithstanding the provisions of subsection (a), a named insured
> may waive coverage providing stacking or uninsured or underinsured coverage in
> which case the limits of coverage available under the policy for an insured shall
> be the stated limits for the motor vehicle as to which the injured person is an
> insured.

75 Pa.C.S.A. § 1738(b).

57.     Section 1738(c) of the Pennsylvania Motor Vehicle Financial Responsibility Law

provides:

> (c) More than one vehicle.- Each named insured purchasing uninsured or
> underinsured motorist coverage for more than one vehicle under a policy shall be
> provided the opportunity to waive the stacked limits of coverage and instead
> purchase as described coverage as described in subsection (b). The premiums for
> an insured who exercise such waiver shall be reduced to reflect the different cost
> of such coverage.

75 Pa.C.S.A. § 1738(c).

58.     The Pennsylvania Courts have held that the addition of a new vehicle to an unstacked policy by endorsement and/or issuance of Amended Declarations Pages requires that a new Waiver of Stacking be obtained from the named insured in order for the Waiver to be valid. See  Sackett v. Nationwide Mutual Insurance Company ("Sackett I") 919 A.2d 194 (Pa. 2007); Sackett v. Nationwide Mutual Insurance Company ("Sackett II") 940 A.2d 329 (Pa. 2007); Sackett v. Nationwide Mutual Insurance Company ("Sackett III") 4 A.3d 637 (Pa. Super. 2010).

59.     Therefore, in Pennsylvania, the addition of a new vehicle to an existing unstacked policy by way of endorsement and/or issuance of Amended Declarations Pages requires that a new Waiver of Stacking be obtained in order to effectuate a valid waiver of stacking of uninsured and underinsured motorist coverages.

60.     Since the Defendant, Travelers, failed to secure additional Waivers of Stacking with the addition of a new vehicle to the existing unstacked Automobile Policy by endorsement and/or issuance of Amended Declarations Pages, the Defendant, Travelers, is required to make available stacked underinsured motorist benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question.

61.     The Defendant, Travelers, is required to make stacked underinsured motorist coverage up to an additional $50,000.00 available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

62.     The refusal of the Defendant, Travelers, to make stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is unlawful, illegal and in wanton and willful disregard of the rights of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

63. Since the Defendant, Travelers, failed to secure additional Waivers of Stacking with the addition of new vehicles to the unstacked Automobile Policy by way of endorsement or Amended Declarations Pages, the Defendant, Travelers, is required to make available stacked underinsured motorist benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question.

64. The Defendant, Travelers, is required to make stacked underinsured motorist coverage of up to an additional $50,000.00 in stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, for the additional two (2) vehicles insured at the time of the accident.

65. The refusal of the Defendant, Travelers, to make stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is unlawful, illegal and in wanton and willful disregard of the rights of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

66. The addition of a new vehicle to an existing policy by endorsement and/or issuance of Amended Declarations Pages requires that a new Waiver of Stacking be obtained in order to effectuate a valid waiver of stacking of uninsured and underinsured motorist coverages.

67. The failure of the Defendant, Travelers, to secure new Waivers of Stacking with the addition of vehicles to the Automobile Policy requires that the Defendant, Travelers, make stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question.

68. Since the Defendant, Travelers, failed to secure additional Waivers of Stacking with the addition of new vehicles to the Automobile Policy, the Defendant, Travelers, is required to make

available stacked underinsured motorist benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question.

69.     The Defendant, Travelers, maintains the position that the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is not entitled to recover stacked underinsured motorist benefits under the Automobile Policy.

70.     The Defendant, Travelers, is required to provide stacked underinsured motorist coverage to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, as a result of its failure to secure new waivers of stacking with the addition of new vehicles to the Automobile Policy by endorsement or issuance of Amended Declarations Pages.

71.     The Defendant, Travelers, has acted wantonly, willfully and in reckless disregard of the rights of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, in refusing to make stacked underinsured motorist coverage available to him.

72.     There is no reasonable basis for the refusal to make stacked or underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, under the Automobile Policy in question.

73.     The Defendant, Travelers, has refused to make stacked underinsured motorist coverage available to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, with knowledge that its refusal to do so has no basis in law or in fact.

74.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to a declaration that he is eligible to recover stacked underinsured motorist benefits under the Automobile Policy in question.

75.     The controversy poses an issue for judicial determination under the Declaratory Judgment Act.

**13**

76.     The controversy involves substantial rights of the parties to the action.

77.     The controversy poses an issue for judicial determination which is not within the scope of authority of any arbitrator or arbitration panel pursuant to the policy of insurance in question.

78.     A judgment of this Court in this action will serve a useful purpose in clarifying and settling the legal relations at issue between the parties.

79.     A judgment of this Court will determine, terminate and afford relief from the uncertainty and controversy giving rise to this action.

80.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, and members of the class are entitled to counsel fees as a result of the vexatious and obdurate conduct of the Defendant, Travelers.

WHEREFORE, the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, respectfully requests that the Court enter an Order:

(a) declaring that the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover stacked underinsured motorist benefits under the Automobile Policy issued by the Defendant, Travelers Insurance, to Rodney Brown and Tammie D. Brown in connection with fatal injuries sustained in the January 5, 2018 motor vehicle accident by reason of its failure to secure a new Waiver of Stacking with the addition of new vehicles to the policy by endorsement and/or issuance of Amended Declarations Pages;

(b) declaring that each member of the class is entitled to recover stacked uninsured and/or underinsured motorist coverage under the applicable Automobile Policy by reason of its failure to secure a new stacking Waiver of Stacking with the addition of new vehicles to the policy by endorsement and/or issuance of Amended Declarations Pages;

(c) awarding interest, counsel fees and costs; and

(d) such other relief as the Court deems appropriate.

14

## COUNT II
### (Breach of Contract)

81.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, hereby incorporates by reference the foregoing Paragraphs 1 through 80 of this Complaint as though same were fully set forth herein.

82.     At all times material hereto, Tammie D. Brown was the named insured under an Automobile Policy issued by the Defendant, Travelers, providing coverage in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

83.     At all times material hereto, the decedent, Rodney Brown resided in the household with Tammie D. Brown, his wife.

84.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown provided $50,000.00/$100,000.00 in underinsured motorist coverage for two (2) separate motor vehicles at the time of the accident.

85.     The Automobile Insurance Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown provided coverage for the following motor vehicles:

        (a)     2013 Kia Sorento LX

        (b)     2005 Dodge Dakota SLT

See Exhibit "B".

86.     The Defendant, Travelers, has failed to secure a new Waiver of Stacking with the addition of the 2013 Kia Sorento LX and the 2005 Dodge Dakota SLT to the policy by endorsement namely the issuance of Amended Declarations Pages and, therefore, is required to provide stacked underinsured motorist coverage to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

Case ID: 190802259

87.     The policy of insurance issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown contained an Uninsured/Underinsured Motorist Coverage Endorsement – Pennsylvania which provides, in pertinent part:

OUR PROMISE

If uninsured motorist coverage is indicated on the "Declaration", "we" will pay damages for bodily injury that the law entitles "anyone we protect" or the legal representative of "anyone we protect" to recover from the owner or operator of an "uninsured motor vehicle". If underinsured motorist coverage is indicated on the "Declarations", "we" will pay damages for bodily injury that the law entitles "anyone we protect" or the legal representative of "anyone we protect" to recover from the owner or operator of an "underinsured motor vehicle".

See Exhibit "B", Uninsured/Underinsured Motorist Coverage Endorsement – Pennsylvania, p. 2.

88.     The Uninsured/Underinsured Motorist Coverage Endorsement – Pennsylvania defines "anyone we protect" as, *inter alia*:

"Anyone we protect" means:

1.     "you" and any "relative";

See Exhibit "B", Uninsured/Underinsured Motorist Coverage Endorsement – Pennsylvania, p. 1.

89.     The Automobile Policy issued by the Defendant, Travelers, defines "you" as the "subscriber" identified as a named insured on the "Declarations" and other identified as Named Insured(s) on the "Declarations". See Exhibit "B", Automobile Policy, p. 3.

90.     The subscriber identified as the named insured on the Declarations is Rodney Brown and Tammie D. Brown.

91.     The Automobile Policy issued by the Defendant, Travelers, defines "relative" as follows:

"Relative" means a "resident" of "your" household who is a:

1.     person related to "you" by blood, marriage or adoption; or

2.     . ward or any other person under 21 years old in "your" case.

**16**

Case ID: 190802259

See Exhibit "B", Automobile Policy, p. 2.

92.    At the time of the accident, the decedent, Rodney Brown resided with the named insured, Tammie D. Brown, his wife.

93.    The Automobile Policy issued by the Defendant, Travelers, defines "underinsured motor vehicle" as follows:

> "Underinsured motor vehicle" means a "motor vehicle" for which the limits of available liability bonds or insurance or self-insurance at the time of the accident are insufficient to pay losses and damages.

See Exhibit "B", Uninsured/Underinsured Motorist Coverage Endorsement – Pennsylvania, p. 1.

94.    The vehicle operated by David Zalonka at the time of the January 5, 2018 motor vehicle accident was an underinsured motor vehicle.

95.    The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover underinsured motorist benefits from the Defendant, Travelers, as a result of the fatal injuries sustained by the Plaintiff's decedent in an January 5, 2018 motor vehicle accident.

96.    The January 5, 2018 motor vehicle accident was the result of the negligence and carelessness of David Zalonka in the operation of her motor vehicle.

97.    The negligence and carelessness of David Zalonka consisted of, but was not limited to:

(a)    failing to keep a proper lookout;

(b)    failing to maintain control of her vehicle;

(c)    operating her vehicle at an excessive rate of speed;

(d)    failing to maintain an assured clear distance;

(e)    causing her vehicle to leave the roadway and roll over several times;

**17**

Case ID: 190802259

(f)     violating the ordinances and laws of the Commonwealth of Pennsylvania with respect to the operation of motor vehicles;

(g)     such other negligence and carelessness as may be developed more fully during discovery.

98.     The negligence and carelessness of David Zalonka was the cause of the fatal injuries sustained by the Plaintiff's decedent, Rodney Brown.

99.     The Plaintiff's decedent, Rodney Brown, sustained fatal injuries in the accident as a result of the negligence and carelessness of David Zalonka.

100.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover wrongful death damages as underinsured motorist benefits from the Defendant, Travelers, as a result of the fatal injuries sustained by the decedent, Rodney Brown, in the January 5, 2018 motor vehicle accident.

101.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover survival action damages as underinsured motorist benefits from the Defendant, Travelers, as a result of the fatal injuries sustained by the decedent, Rodney Brown, in the January 5, 2018 motor vehicle accident.

102.     At the time of the January 5, 2018 motor vehicle accident, the Automobile Policy issued by the Defendant, Travelers, provided coverage for two (2) motor vehicles.

103.     The Defendant, Travelers, has tendered and paid the unstacked $50,000.00 limit of underinsured motorist coverage under the Automobile Policy.

104.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover an additional $50,000.00 in stacked underinsured motorist benefits under the policy of insurance issued by the Defendant, Travelers, in connection with the

**18**

fatal injuries sustained by the decedent, Rodney Brown, in the January 5, 2018 motor vehicle accident.

105.     The Defendant, Travelers, has breached the terms, agreements, promises and provisions of the Automobile Policy issued to Rodney Brown and Tammie D. Brown by failing to make payment of the additional $50,000.00 in stacked underinsured motorist benefits.

106.     The Defendant, Travelers, has breached the terms, agreements, promises and provisions of Automobile Policies issued to each member of the class by failing to make payment of stacked uninsured and/or underinsured motorist benefits in an amount which is fair and reasonable and compensates his/her for their loss.

107.     The Defendant, Travelers, has wantonly, willfully and recklessly breached its contractual obligations to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, by failing to make payment of the additional stacked $50,000.00 of underinsured motorist benefits.

108.     The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover an additional $50,000.00 in stacked underinsured motorist benefits from the Defendant, Travelers, under the Automobile Policy issued to Rodney Brown and Tammie D. Brown.

WHEREFORE, the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, respectfully requests that the Court enter an Order:

(a) awarding an additional $50,000.00 in stacked underinsured motorist benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased; and

(b) awarding stacked uninsured and/or underinsured motorist benefits to each member of the class.

Case ID: 190802259

## COUNT III
### (Bad Faith – Common Law and Statutory)

109.    The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, hereby incorporates by reference the foregoing Paragraphs 1 through 108 of this Complaint as though same were fully set forth herein.

110.    The Automobile Policy issued by the Defendant, Travelers, to Rodney Brown and Tammie D. Brown contains an implied covenant of good faith and fair dealing.

111.    The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover extra-contractual bad faith damages from the Defendant, Travelers, for its breach of the implied covenant of good faith and fair dealing.

112.    The Defendant, Travelers, has breached the implied covenant of good faith and fair dealing by failing to make payment of the additional $50,000.00 in stacked underinsured motorist coverage to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

113.    The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover from the Defendant, Travelers, all direct and consequential damages as a result of the breach of the implied covenant of good faith and fair dealing contained in the policy.

114.    The Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, is entitled to recover all extra-contractual bad faith damages from the Defendant, Travelers, by reason of the breach of statutory good faith duties.

115.    The Defendant, Travelers, has breached the Bad Faith Statute, 42 Pa.C.S.A. § 8371, by reason of its refusal to pay the additional, stacked $50,000.00 in underinsured motorist

Case ID: 190802259

benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

116.   The Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. § 8371, provides:

> In an action arising under an insurer policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)   Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)   Award punitive damages against the insurer.
>
> (3)   Assess court costs and attorneys fees against the insurer.

42 Pa.C.S.A. § 8371.

117.   The Defendant, Travelers, has acted in bad faith and in violation of 42 Pa.C.S.A. § 8371 in refusing to pay and/or acknowledge its obligation to pay stacked underinsured motorist coverage to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

118.   The Defendant, Travelers, has acted in bad faith and in violation of 42 Pa.C.S.A. § 8371 in refusing to pay and/or acknowledge its obligation to pay stacked uninsured and/or underinsured motorist coverage to each member of the class.

119.   The Defendant, Travelers, has acted in bad faith in ignoring the law of the Courts of Pennsylvania in Sackett v. Nationwide Mutual Insurance Company ("Sackett I") 919 A.2d 194 (Pa. 2007); Sackett v. Nationwide Mutual Insurance Company ("Sackett II") 940 A.2d 329 (Pa. 2007); Sackett v. Nationwide Mutual Insurance Company ("Sackett III") 4 A.3d 637 (Pa. Super. 2010).

120.    The Defendant, Travelers, has acted in bad faith and in violation of 42 Pa.C.S.A. §
8371 in wantonly, willfully and in reckless disregard of the rights of Tammie D. Brown,
Administrator of the Estate of Rodney Brown, Deceased, refusing to acknowledge his right to
recover stacked underinsured motorist benefits under the Automobile Policy.

121.    The Defendant, Travelers, has acted in bad faith and in violation of 42 Pa.C.S.A. §
8371 in wantonly, willfully and in reckless disregard of the rights of the members of the class
refusing to acknowledge his/her right to recover stacked uninsured and/or underinsured motorist
benefits under the appropriate policy.

122.    The Defendant, Travelers, has further acted in bad faith and in violation of 42
Pa.C.S.A. § 8371 in failing to make payment of a fair and reasonable amount of underinsured
motorist benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney
Brown, Deceased, and each member of the class, by, *inter alia*:

    (a)    engaging in unfair or deceptive acts or practices;

    (b)    failing to acknowledge its obligation to pay stacked underinsured motorist
           benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of
           Rodney Brown, Deceased;

    (c)    failing to acknowledge its obligation to pay stacked uninsured and/or
           underinsured motorist benefits to each member of the class;

    (d)    failing to fully, fairly and promptly evaluate the underinsured motorist
           claims of the Plaintiff, Tammie D. Brown, Administrator of the Estate of
           Rodney Brown, Deceased;

    (a)    failing to fully, fairly and promptly evaluate the uninsured and/or
           underinsured motorist claims of each member of the class;

    (f)    failing to offer a fair and reasonable amount of underinsured motorist
           benefits to the Plaintiff, Tammie D. Brown, Administrator of the Estate of
           Rodney Brown, Deceased, to fully and fairly compensation him for his loss;

    (g)    failing to offer a fair and reasonable amount of underinsured motorist
           benefits to each member of the class to fully and fairly compensation them

for their loss;

(h)     failing to effectuate a prompt and fair settlement of the underinsured motorist claims of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased;

(I)     failing to effectuate a prompt and fair settlement of the uninsured and/or underinsured motorist claims of each member of the class;

(j)     failing to properly and fairly resolve the underinsured motorist claim of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased;

(k)     failing to properly and fairly resolve the uninsured and/or underinsured motorist claim of each member of the class;

(l)     violating the Unfair Insurance Practices Act, 40 P.S. § 1171.1 et seq.;

(m)     acting in a dilatory and obdurate manner in the handling and defense of the individual and class claims in this litigation, both before and during the pending lawsuit;

(n)     wantonly and willfully disregarding the rights of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased;

(o)     wantonly and willfully disregarding the rights of each member of the class;

(p)     recklessly disregarding the right of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, to recover stacked underinsured motorist benefits;

(q)     wrongfully advising the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, that he is not entitled to stack underinsured motorist benefits;

(®)     wrongfully advising each member of the class that he/she is not entitled to stack uninsured and/or underinsured motorist benefits;

(s)     violating the Unfair Claims Settlement Practices, 31 Pa. Code § 146.1 et seq.;

(t)     recklessly disregarding the rights of each member of the class to recover stacked uninsured and/or underinsured motorist benefits;

(u)     elevating its own interests above those of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased;

**23**

(v)     elevating its own interests above those of each member of the class;

(w)     breaching the duty of good faith and fair dealing;

(x)     breaching the fiduciary duties owed to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, and each member of the class;

(y)     violating the statutes and regulations governing the actions and practices of insurers in Pennsylvania;

(z)     violating its own internal policies, procedures, practices and guidelines for the handling of underinsured motorist claims; and

(aa)    such other acts or omissions as may be developed during discovery.

123.    The Defendant, Travelers, is liable for payment of interest, fees, costs and punitive damages to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, for the bad faith conduct in handling and adjusting his underinsured motorist claim.

124.    The Defendant, Travelers, is liable for payment of all actual damages and consequential damages to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, for the wanton, willful and reckless bad faith conduct in handling and refusing to fairly adjust, evaluate and settle the underinsured motorist claims of the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased.

WHEREFORE, the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, respectfully requests that the Court enter an Order awarding actual damages, consequential damages, interest, counsel fees, costs and punitive damages to the Plaintiff, Tammie D. Brown, Administrator of the Estate of Rodney Brown, Deceased, and each member of the class.

Case ID: 190802259

8-20-19

RESPECTFULLY SUBMITTED:

BY:     /s/ Christian J. Hoey, Esquire

CHRISTIAN J. HOEY, Esquire
PA Attorney I.D. # 70999
50 Darby Road
 Paoli, PA 19301
610-647-5151
FAX: 610-993-8472

Attorney for Plaintiff

**25**

**ATTORNEY VERIFICATION**

I, Christian J. Hoey, Esquire, hereby swear or affirm that I am Counsel for Plaintiff, Tammie D. Brown, and that I am authorized to make this statement on behalf of Plaintiff. I hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of 18 PA. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: 8-20-19

CHRISTIAN J. HOEY, ESQUIRE
Attorney for Plaintiff,
Tammie D. Brown, as Administratrix of
the Estate of Rodney Brown

Case ID: 190802259



Filed and Attested by the
Office of Judicial Records
20 AUG 2019 10:53 am
E. KALOGRIAS

# EXHIBIT "A"

# Commonwealth of Pennsylvania – Short Certificate
## County of Berks



I, **Larry Medaglia**, Register for the Probate of Wills and Granting Letters of Administration in and for Berks County, do hereby certify that on January 23, 2018, LETTERS OF ADMINISTRATION in common form were granted by the Register of said County, on the estate of

**RODNEY GENE BROWN**, late of MAIDENCREEK TOWNSHIP in said county, deceased, to **TAMMIE D. BROWN** and that same has not since been revoked.

*IN TESTIMONY WHEREOF*, I have here unto set my hand and affixed the seal of said office at BERKS, PENNSYLVANIA, on January 23, 2018.

File No:          0618-0124
Date of Death :   January 05, 2018
S.S. #:           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

NOT VALID WITHOUT OFFICIAL SIGNATURE AND SEAL OF OFFICE



*H7A5128 Claim Margie — 412 338 4228 bussiness*
*(Claims adjuster) Margaret Dilucia —*

# TRAVELERS

## AUTOMOBILE POLICY CONTINUATION DECLARATIONS

### 1. Named Insured

TAMMIE D. & RODNEY G. BROWN
352 CASSIDY COURT
BLANDON PA 19510

*7,618 Mike Shupp (appraiser)*
*+ tax -500   Total loss*
*500 off of deduct. of TRK.*
*8075.08*

### Your Agency's Name and Address

FA INSURANCE
30 E LANCASTER AVE
SHILLINGTON PA 19607

Your Policy Number : 947261105 101 1
Your Account Number: 947261105

**For Policy Service Call** 610-775-0333
**For Claim Service Call** 1-800-CLAIM33

*7575.08 payoff*

### 2. Your Total Premium for the Policy Period is $784.00.
The policy period is from January 7, 2018 to July 7, 2018.

### 3. Your Vehicles

| | | Identification Numbers |
|---|---|---|
| 1 | 2013 KIA SORENTO LX | 5XYKTCA62DG310929 |
| 2 | 2005 DODGE DAKOTA SLT | 1D7HW42NX5S208602 |

### 4. Coverages, Limits of Liability and Premiums

Insurance is provided only where a premium is shown for the coverage.

*IF COLLISION COVERAGE IS PROVIDED UNDER THIS POLICY, COVERAGE EXTENDS
TO VEHICLES WHICH YOU RENT FOR 30 DAYS UNDER A RENTAL CAR COVERAGE
AGREEMENT. PLEASE REMEMBER THAT COLLISION COVERAGE DOES NOT PAY FOR
LOSS OF USE. PLEASE CONTACT YOUR TRAVELERS AGENT OR REPRESENTATIVE IF
YOU HAVE QUESTIONS. IF YOU DO NOT CARRY COLLISION INSURANCE, THIS POLICY
DOES NOT PAY FOR DAMAGE TO RENTAL VEHICLES.*

| | | 1 |  |
|---|---|---|---|
| | | 13 KIA SORENTO LX | 05 DODGE DAKOTA SLT |
| A | - Bodily Injury $100,000 each person $300,000 each accident | $ 93 | $ 77 |
| B | - Property Damage $50,000 each accident | 71 | 58 |
| D7 | - Uninsured Motorists (Bodily Injury) Non-Stacked $50,000 each person $100,000 each accident See Endorsement A37045 | 9 | 9 |
| D9 | - Underinsured Motorists (Bodily Injury) Non-Stacked $50,000 each person $100,000 each accident See Endorsement A37045 | 35 | 35 |

Case ID: 190802259

## 4. Coverages, Limits of Liability and Premiums (continued)

|  |  |  | 13 KIA<br>SORENTO LX | 05 DODGE<br>DAKOTA SLT |
|---|---|---|---|---|
| E | - | Collision<br>Actual Cash Value less<br>$500 deductible | 125 | 91 |
| F | - | Comprehensive<br>(Other than Collision)<br>Actual Cash Value less<br>$50 deductible | 44 | 41 |
| G | - | Extended Transportation Expense<br>$20 per day/$600 maximum | 6 | 6 |
| QB | - | First Party Benefits Coverage<br>Full Tort Option<br>See Endorsement A37022 | 29 | 16 |
| R | - | Added First Party Benefits<br>A4-Increased Medical Expenses<br>$10,000<br>B7-Income Loss<br>Maximum Amount/Monthly Amount<br>$25,000/$1,500<br>See Endorsement A37022 | 21 | 12 |
|  |  | Roadside Assistance Coverage<br>15 miles<br>See Endorsement A00450 | 3 | 3 |

Subtotals for your vehicles:                          $436        $348

Total Premium for This Policy:   $784

## 5. Information Used to Rate Your Policy

### Discounts Included in Your Premium

| Anti Theft Device | 13 KIA<br>SORENTO LX |  |
|---|---|---|
| Passive Restraint | 13 KIA<br>SORENTO LX | 05 DODGE<br>DAKOTA SLT |

Multiple Cars

Account Discount

# EXHIBIT "B"

Case ID: 190802259



**TRAVELERS**

**Named Insured:**  TAMMIE D. & RODNEY G. BROWN
**Policy Number:**  947261105 101 1
**Policy Period:**  July 7, 2017 to January 7, 2018.
**Issued On:**  June 9, 2017

---

## FOR YOUR INFORMATION (continued)

**YOU MAY PURCHASE UNINSURED AND/OR UNDERINSURED MOTORISTS COVERAGE AT ANY AVAILABLE LIMITS FROM $15,000/$30,000 UP TO YOUR BODILY INJURY LIABILITY LIMITS. YOU MAY REJECT THESE COVERAGES ENTIRELY.**

**ACCIDENT FORGIVENESS: (Insuring with TRAVELERS can save you money)**
If you've been a TRAVELERS auto policyholder for at least 5 years and haven't had an at fault accident in the last 5 years, TRAVELERS will forgive your next at fault accident; no points will be charged.

PL-7782 5-94    818/0DHD18                    001820/00224 F3118A85 8808 08/09/17

Case ID: 190802259



This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No insurance is afforded hereunder.

Signature:

*Roberta Collins*

Date: 4.20.2018

## AMENDMENT OF POLICY PROVISIONS - PENNSYLVANIA

### I. DEFINITIONS

The Definitions section is amended as follows:

**A.** The provision J.4. of the definition of "your covered auto" is replaced by the following:

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    a. Breakdown;

    b. Repair;

    c. Servicing;

    d. Loss;

    e. Destruction; or

    f. Being inspected or transported by a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act.

This provision (J.4.) does not apply to the Damage To Your Auto Section.

**B.** The following definitions are added:

"Serious injury" means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

"Economic loss" means medical and other out-of-pocket expenses.

"Noneconomic loss" means pain and suffering and other nonmonetary damages.

### II. TORT LIABILITY INSURANCE OPTIONS

The following provisions are added:

**A. LIMITED TORT OPTION**

If the Declarations shows that Coverage QA is provided, the Limited Tort Option applies. Each "insured" who is bound by this option may seek compensation only for "economic loss" suffered because of "bodily injury" caused by accident as the consequence of the fault of another person. However, each "insured" may recover damages as if the "insured" damaged had elected the Full Tort Option:

1. If the bodily injury suffered is a "serious injury"; or

2. With respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission, in the course of such business, other than a defect in a motor vehicle which is operated by such business; or

3. If injured while occupying a motor vehicle other than a private passenger motor vehicle as defined in the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984, as amended; or

4. If the person at fault:

    a. is convicted, or accepts Accelerated Rehabilitative Disposition for driving under the influence of alcohol or a controlled substance in that accident; or

    b. is operating a motor vehicle registered in another state; or

    c. intends to cause intentional injury; or

    d. has not maintained financial responsibility as required by Pennsylvania law;

provided that nothing in Paragraphs a. through d. shall affect the limitation placed on a person against recovering noneconomic damages under Uninsured Motorists or Underinsured Motorists Coverage.

**B. FULL TORT OPTION**

If the Declarations shows that Coverage QB is provided, the Full Tort Option applies. Each "insured" bound by this option may seek compensation for "noneconomic loss" claimed and "economic loss" suffered because of bodily injury caused by accident as the consequence of the fault of another person.

**C. WHO IS AN INSURED**

As used in this section (II), an "insured" means you, any "family member" or a minor in the custody of either you or any "family member".

**D. OTHER INSURANCE**

1. If you are an "insured" under more than one liability insurance policy, and the policies have conflicting tort options, the policy providing the Full Tort Option applies.

PL-6735 11-16

Endorsement Symbol Number
A37015

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

001925/00224 F3116A55 8906 06/09/17

Case ID: 190802259

This exclusion (2.) does not apply to a vehicle used for a:

    a.   Share-the-expense car pool;

    b.   Charitable purpose; or

    c.   Volunteer purpose.

**C.** Exclusion 12. is added:

    12. Sustained while "occupying" "your covered auto" during a period it is rented or leased by you to others. However, this exclusion (12.) does not apply to you or a "family member".

**D.** The Other Insurance provision is replaced by the following:

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance available, any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

## V. DAMAGE TO YOUR AUTO

The Damage to Your Auto Section is amended as follows:

**A.** Paragraph E. of the Insuring Agreement is replaced by the following:

    **E.** "Non-owned auto" means:

      1.  Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

      2.  Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

        a.  Breakdown;

        b.  Repair;

        c.  Servicing;

        d.  Loss;

        e.  Destruction; or

        f.  Being inspected or transported by a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act.

**B.** The Other Sources of Recovery provision is replaced by the following:

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

Any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

    1.  Any coverage provided by the owner of the "non-owned auto";

    2   Any other applicable physical damage insurance;

    3.  Any other source of recovery applicable to the loss.

However, any insurance we provide for a "non-owned auto" while used as a temporary substitute for "your covered auto" that is provided by a motor vehicle dealer as defined in the Pennsylvania Board of Vehicles Act, shall be primary.

**C.** Exclusion 1. is replaced by the following:

    1.  Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used, or during the period of time it is available for hire, as a public or livery conveyance. This exclusion (1.) applies whether or not there is:

      a.  A passenger "occupying" the vehicle; or

      b.  Property being transported for a fee in or upon the vehicle.

    This exclusion (1.) does not apply to a vehicle used for a:

      a.  Share-the-expense car pool;

      b.  Charitable purpose; or

      c.  Volunteer purpose.

**D.** Exclusion 16. is added:

    16. Loss to "your covered auto" during a period it is rented or leased by you to others. However, this exclusion (16.) does not apply to the operation of "your covered auto" by you or a "family member".

Endorsement Symbol Number
A37015

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

001926/00224 F3116A55 8906 08/00/17

Case ID: 190802259

## VI. GENERAL PROVISIONS

The General Provisions are amended as follows:

**A.** Sections A., B., and C. of the Termination provision are replaced as follows:

**A. Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown on the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 15 days notice of cancellation:

      (1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

      (2) For nonpayment of premium;

      (3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

   b. At least 60 days notice if the policy was obtained through material misrepresentation.

   Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice at least 60 days before the expiration date of the policy to the named insured shown in the Declarations page at the address shown on that page.

If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**C. Automatic Termination.** The policy will automatically terminate on the expiration date of any annual policy period without notice if you fail to pay when due any premium installment for this policy or its continuation whether payable directly to us, or through a premium finance plan or credit extension.

This policy, if not already terminated under the terms of this condition, will automatically terminate without notice on the effective date of any other automobile insurance policy, but only for any vehicle described in both policies.

**B.** The following provision is added:

**CONSTITUTIONALITY CLAUSE**

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the policy provisions, subject to the approval of the Insurance Commissioner.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Case ID: 190802259

## FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA

The provisions of the Policy apply unless modified by this endorsement.

### I. DEFINITIONS

With respect to all First Party Benefits Coverage:

"The act" means the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984, as amended.

In addition, the following words and phrases are defined for all First Party Benefits coverage.

"Accidental death" means the death of you or any family member from "bodily injury" caused by accident, if the death occurs within 24 months from the date of the accident.

"Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

"Funeral expense" means reasonable expenses incurred for, and directly related to, the funeral, burial, cremation or other form of disposition of the remains of the deceased insured. The expenses must be incurred as a result of the death of the "insured" and within 24 months from the date of the accident.

"Income loss" means eighty (80%) percent of gross income actually lost by an "insured". "Income loss" also means reasonable expenses actually incurred for hiring:

(a) a substitute to perform the work a self-employed "insured" would have performed except for "bodily injury", or

(b) special help, thereby enabling a person to work, thereby reducing loss of gross income.

"Income loss" does not include:

(a) loss of expected income for any period following the death of an insured; or

(b) expenses incurred for services performed following the death of an "insured"; or

(c) any loss of income during the first five (5) working days the "insured" did not work after the accident because of the "bodily injury".

"Insured" means:

1. you or any "family member";

2. any other person:

   a.  while "occupying" "your covered auto"; or

   b.  while a pedestrian if injured as a result of an accident in Pennsylvania involving "your covered auto".

If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

"Medical expenses" means reasonable and necessary charges incurred for:

(a) medical treatment, including but not limited to:

   (1)  medical, hospital, surgical, nursing and dental services;

   (2)  medications, medical supplies and prosthetic devices; and

   (3)  ambulance;

(b) medical and rehabilitative services, including but not limited to:

   (1)  medical care;

   (2)  licensed physical therapy, vocational rehabilitation and occupational therapy;

   (3)  osteopathic, chiropractic, psychiatric and psychological services; and

   (4)  optometric services, speech pathology and audiology;

(c) non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

All medical treatment and medical and rehabilitative services must be provided by or prescribed by a person or facility approved by the Department of Health, the equivalent

Case ID: 190802259

governmental agency responsible for health programs or the accrediting designee of a department or agency of the state in which those services are provided.

Payment of "medical expenses" incurred after 18 months from the date of the accident causing "bodily injury" shall be made only if within 18 months from the date of the accident, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury.

"Motor vehicle" means a self-propelled vehicle, operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

1. By muscular power; or
2. On rails or tracks.

"Named insured" means the person or organization named in Item 1 in the Declarations.

"Your covered auto" means a "motor vehicle":

1. to which liability coverage under this policy applies and for which a specific premium is charged; and
2. for which you maintain First Party Benefits coverage as required under "the act".

## II. BENEFITS

### A  COVERAGE QA* – BASIC FIRST PARTY BENEFIT
### COVERAGE QB** – BASIC FIRST PARTY BENEFIT

*Indicates that the limited tort option described in "the act" was selected.

**Indicates that the full tort option described in "the act" was selected.

We will pay Basic First Party Benefits consisting of Basic "Medical Expenses" to or for an insured who sustains "bodily injury" caused by accident arising out of the maintenance or use of a "motor vehicle". Our Limit of Liability for Basic "Medical Expenses" is $5,000.

### B.  COVERAGE R – ADDED FIRST PARTY BENEFITS

If Coverage R appears in the Declarations, we will pay in addition to the Basic First Party Benefit, Added First Party Benefits to or for an "insured" who sustains "bodily injury" caused by an accident arising out of the maintenance or use of a "motor vehicle". Added First Party Benefits consist of the following if shown as applicable in the Declarations:

1. Increased "medical expenses";
2. "Income loss";
3. "Funeral expense"; and
4. "Accidental death".

1. **Option A (INCREASED MEDICAL EXPENSES).** This option applies if option "A4", "A5", "A6", or "A7" appears in the Declarations following Coverage R.

   The Limit of Liability for the Basic Medical Expenses is increased to the amount shown in the following schedule for the "A" option shown in the Declarations.

   #### A Option Schedule

   | Option | Amount |
   | --- | --- |
   | A4 | $10,000 |
   | A5 | $25,000 |
   | A6 | $50,000 |
   | A7 | $100,000 |

2. **Option B (INCOME LOSS).** This option applies if option "B4", "B5", "B6", "B7", or "B8" appears in the Declarations following Coverage R.

   The Limit of Liability for "income loss" is the "Maximum Amount" shown in the following schedule for the "B" option shown in the Declarations. The Limit of Liability for any one month is the "Monthly Amount" shown for that option in the following schedule.

Case ID: 190802259

### B Option Schedule

| Option | Maximum Amount | Monthly Amount |
|---|---|---|
| B4 | $15,000 | $1,500 |
| B5 | $5,000 | $1,000 |
| B6 | $15,000 | $1,000 |
| B7 | $25,000 | $1,500 |
| B8 | $50,000 | $2,500 |

3.  **Option C (FUNERAL EXPENSE).**
    This option applies if option "C6" or "C7" appears in the Declarations following Coverage R.

    The Limit of Liability for "funeral expense" is the amount shown in the following schedule for the "C" option shown in the Declarations.

### C Option Schedule

| Option | Amount |
|---|---|
| C6 | $1,500 |
| C7 | $2,500 |

4.  **Option D (ACCIDENTAL DEATH).**
    This option applies if option "D6", "D7" or "D8" appears in the Declarations following Coverage R.

    The Limit of Liability for "accidental death" is the amount shown in the following schedule for the "D" option shown in the Declarations.

### D Option Schedule

| Option | Amount |
|---|---|
| D6 | $5,000 |
| D7 | $10,000 |
| D8 | $25,000 |

5.  **Options H, J, K and L (Combination First Party Benefits).** One of these options apply if option "H" "J" "K", or "L" appears in the Declarations following Coverage R.

    The Limit of Liability for Basic "Medical Expenses", Increased "Medical Expenses", "Income Loss", "Funeral Expense" and "Accidental Death" combined is the amount shown as "total limit" in the following schedule for the option shown in the Declarations. The

"total limit" is the most we will pay as a result of "bodily injury" to any one "insured" as the result of any one accident. However, the most we will pay for:

A.  "Funeral Expense" is $2,500.
B.  "Accidental Death" is the amount shown as "Accidental Death" Benefit in the following schedule for that option.

### H J K and L Option Schedule

| Option | Total Limit | Accidental Death Benefit |
|---|---|---|
| H | $50,000 | $10,000 |
| J | $100,000 | $10,000 |
| K | $177,500 | $25,000 |
| L | $277,500 | $25,000 |

We will only pay for expenses or loss incurred within three years from the date of the accident.

### EXCLUSIONS

We do not provide benefits for "bodily injury":

1.  Sustained by any person while intentionally causing or attempting to cause "bodily injury" to:
    a.  himself;
    b.  herself; or
    c.  any other person.

2.  Sustained by any person while committing a felony.

3.  Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4.  Sustained by any person while maintaining or using a "motor vehicle" knowingly converted by that person. However, this exclusion (4.) does not apply to:
    a.  You; or
    b.  any "family member".

5.  Sustained by any person who, at the time of the accident:
    a.  is the owner of one or more registered "motor vehicles" and none of those "motor vehicles" have in effect the financial

Case ID: 190802259

responsibility required by "the act", or

b. is "occupying" a "motor vehicle" owned by that person for which the financial responsibility required by "the act" is not in effect.

6. Sustained by any person maintaining or using a "motor vehicle" while located for use as a residence or premises.

7. Sustained by any person injured as a result of conduct within the course of the business of repairing, servicing or otherwise maintaining "motor vehicles". This exclusion (7.) does not apply if the conduct is off the business premises.

8. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (8.) does not apply to:

a. You; or

b. any "family member".

9. Sustained by any person while "occupying":

a. a recreational vehicle designed for use off public roads; or

b. a motorcycle, moped or similar-type vehicle.

10. Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. war (declared or undeclared);

c. civil war;

d. insurrection; or

e. rebellion or revolution.

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. nuclear reaction;

b. radiation; or

c. radioactive contamination.

## LIMIT OF LIABILITY

The Limit of Liability for all the First Party Benefits that apply is the most we will pay to or for each "insured" as the result of any one accident. This is the most we will pay regardless of the number of:

1. Claims made;

2. Vehicles or premiums shown in the Declarations;

3. Vehicles involved in the accident; or

4. Insurers providing First Party Benefits.

If combination First Party Benefits are afforded, we will apply the total limit of liability to provide any separate limits required by "the act" for all First Party Benefits. This provision will not change our total limit of liability.

Any amount payable under all First Party Benefits Coverage shall be excess over any amounts paid, payable or required to be provided to an "insured" under any workers' compensation law or similar law.

## PRIORITIES OF POLICIES

We will pay all First Party Benefits in accordance with the order of priorities set forth by "the act". We will not pay if there is another insuror at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category listed below is the lowest level of priority. The priority order is:

First:   The insurer providing benefits to the "insured" as a "named insured".

Second:  The insurer providing benefits to the "insured" as a "family member" who is not a "named insured" under another policy providing coverage under "the act".

Third:   The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident.

Fourth:  The insurer providing benefits on any "motor vehicle" involved in the accident if the "insured" is:

a. a pedestrian; and

b. not provided first party benefits under any other automobile policy.

In this priority, an unoccupied parked "motor vehicle" is not a "motor

vehicle" involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

If 2 or more policies have equal priority within the highest applicable priority level;

1. The insurer against which the claim is first made shall process and pay the claim, up to its limit of liability, as if wholly responsible subject to subsequent contribution pro rata from any other insurer for the benefits paid and the cost of processing the claim. If such contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

2. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

## III. CONDITIONS

A. Notice. If an accident occurs, written notice adequately identifying the insured and reasonably accessible facts concerning the time, place and circumstances of the accident shall be given as soon as practicable by or on behalf of each insured to us or any of our authorized agents.

B. Medical Reports; Proof of Claim. As soon as practicable the insured, or someone on his or her behalf, shall give us proof of claim, under oath if required, fully describing the nature and extent of "bodily injury", treatment and rehabilitation received and contemplated and other information to assist us in determining the amount due and payable.

Proof of claim shall be made upon forms furnished by us unless we fail to supply such forms within 15 days after receiving notice of claim.

The "insured" shall submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require. We will pay the costs of such examinations.

The "insured" (or, in the event of such person's incapacity or death, his or her legal representative) shall, if we request, sign papers to enable us to obtain medical reports and copies of records. A copy of such medical report will be forwarded to such "insured" upon his or her written request.

If "income loss" benefits are claimed, the "insured" presenting such claim shall authorize us to obtain details of all earnings paid to him or her by an employer or earned by him or her since the time of the injury or during the year immediately preceding the date of the accident.

C. Customary Charges For Treatment. The amount we will pay to a person or institution providing treatment, accommodation, products or services to an "insured" for an injury covered by benefits for "medical expenses" shall not exceed the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance including self-insurance.

## PAYMENT OF ACCIDENTAL DEATH BENEFITS

The "accidental death" Benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1. The deceased "insured's" surviving spouse; or

2. If there is no surviving spouse, the deceased "insured's" children; or

3. If there is no surviving spouse or surviving children, to the deceased "insured's" estate.

## UNINSURED/UNDERINSURED MOTORISTS ENDORSEMENT - PENNSYLVANIA

The provisions of this endorsement replace the Uninsured Motorists Insurance provisions of the policy.

### UNINSURED MOTORISTS COVERAGE

### COVERAGE D6 - UNINSURED MOTORISTS (BODILY INJURY) STACKED

### COVERAGE D7 - UNINSURED MOTORISTS (BODILY INJURY) NON-STACKED

### UNDERINSURED MOTORISTS COVERAGE

### COVERAGE D8 - UNDERINSURED MOTORISTS (BODILY INJURY) STACKED

### COVERAGE D9 - UNDERINSURED MOTORISTS (BODILY INJURY) NON-STACKED

### INSURING AGREEMENT

A.  We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of either an "uninsured motor vehicle" or an "underinsured motor vehicle" where such coverage is indicated as applicable in the Schedule of this endorsement or in the Declarations, because of "bodily injury":

1.  Sustained by an "insured"; and

2.  Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or the "underinsured motor vehicle".

We will pay under Underinsured Motorists Coverage only if 1. or 2. below applies:

1.  The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2.  A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", subject to our consent to settle, and we:

    a.  Have been given prompt written notice of such tentative settlement; and

    b.  Either advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after re-

ceipt of notification or we give written consent to the tentative settlement.

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" is binding on us unless we:

1.  Received reasonable notice of the pendency of the suit resulting in the judgment; and

2.  Had a reasonable opportunity to protect our interests in the suit.

### DEFINITIONS

A.  "Insured" as used in this endorsement means:

1.  You or any "family member";

2.  Any other person "occupying" "your covered auto" if the occupancy is (or is reasonably believed to be) with your permission.

3.  Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

B.  "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not mean an "uninsured motor vehicle" and does not include any vehicle or equipment:

1.  For which liability coverage is provided under Coverage A. of this policy.

2.  Operated on rails or crawler treads.

3.  Designed mainly for use off public roads while not on public roads.

4.  While located for use as a residence or premises.

C.  "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1.  To which no bodily injury liability bond or policy applies at the time of the accident.

Endorsement Symbol Number
A37045

Case ID: 190802259

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.

3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes:

     (1) insolvent; or

     (2) involved in insolvency proceedings.

However, "uninsured motor vehicle" does not mean an "underinsured motor vehicle" and does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer within the meaning of any applicable motor vehicle law except a self-insurer which is or becomes insolvent.

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our written consent. However, this exclusion (A.1.) does not apply if such settlement does not adversely affect our rights.

B. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by you or any "family member" while "occupying" or when struck by any motor vehicle that you or any "family member" owns; or that is furnished or available for your or any "family member's" regular use, which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

C. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. While occupying "your covered auto" when it is being used, or during the period of time it is available for hire, as a public or livery conveyance. This exclusion (C.1.) applies whether or not there is:

   a. A passenger occupying the vehicle; or

   b. Property being transported for a fee in or upon the vehicle.

This exclusion (C.1.) does not apply to a:

   a. Share-the-expense car pool;

   b. Charitable purpose; or

   c. Volunteer purpose.

2. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

3. While "occupying" "your covered auto" during a period it is rented or leased by you to others. However this exclusion (C.3.) does not apply to you or a "family member".

D. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "non-economic loss" sustained by any "insured" to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle" or an "underinsured motor vehicle" unless the "bodily injury" sustained is a "serious injury".

This exclusion (D.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

E. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits law or similar law except a workers' compensation law.

F. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for punitive or exemplary damages including legal costs related thereto.

Endorsement Symbol Number
A37045

Case ID: 190802259

**LIMIT OF LIABILITY**

**COVERAGE D6 - UNINSURED MOTORISTS (BODILY INJURY) STACKED**

A.  Except as provided in paragraph C:

   If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D6:

   1.  The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

   2.  Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B.  Except as provided in paragraph C:

   If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D6, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C.  With respect to damages caused by the owner or operator of an "uninsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

   1.  "Insureds";

   2.  Claims made;

   3.  Vehicles or premiums shown in the Declarations or Schedule of this endorsement for Coverage D6; or

   4.  Vehicles involved in the accident.

   However, our maximum limit of liability for all damages arising out of "bodily injury" sustained by you or any "family member" is the sum of the applicable limits for all vehicles shown in the Declarations or Schedule of this endorsement for Coverage D6. For any "insured" other than you or any "family member", our maximum limit of liability is the limit applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations or Schedule of this endorsement for Coverage D6; or

4.  Vehicles involved in the accident.

D.  No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D6 and:

   1.  Coverage A or Coverage C of this policy;

   2.  Any Underinsured Motorists Coverage provided by this policy; or

   3.  Any other personal auto policy issued to you by us or any of our affiliates.

E.  We will not make a duplicate payment under Coverage D6 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G.  The limit of liability under Coverage D6 is reduced by any amount paid to the same "insured" for the same accident under Coverage A or Coverage C.

**COVERAGE D7 - UNINSURED MOTORISTS (BODILY INJURY) NON-STACKED**

A.  Except as provided in paragraph C:

   If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D7:

   1.  The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

   2.  Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

Endorsement Symbol Number
A37045

Case ID: 190802259

B. Except as provided in paragraph C:

If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D7, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "uninsured motor vehicle" the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement Coverage D7; or

4. Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D7 and:

1. Coverage A or Coverage C of this policy;

2. Any Underinsured Motorists Coverage provided by this policy; or

3. Any other personal auto policy issued to you by us or any of our affiliates.

E. We will not make a duplicate payment under Coverage D7 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G. The limit of liability under Coverage D7 is reduced by any amount paid to the same "insured" for the same accident under Coverage A or Coverage C.

## COVERAGE D8 - UNDERINSURED MOTORISTS (BODILY INJURY) STACKED

A. Except as provided in paragraph C:

If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D8:

1. The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

2. Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B. Except as provided in paragraph C:

If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D8, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "underinsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement for Coverage D8; or

4. Vehicles involved in the accident.

However, our maximum limit of liability for all damages arising out of "bodily injury" sustained by you or any "family member" is the sum of the applicable limits for all vehicles shown in the Declarations or Schedule of this endorsement for Coverage D8. For any "insured" other than you or any "family member", our maximum limit of liability is the limit applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement for Coverage D8; or

4. Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D8 and;

Endorsement Symbol Number
A37045

Case ID: 190802259

1.  Coverage A, Coverage C or Coverage D6 or Coverage D7 of this policy; or

2.  Any other personal auto policy issued to you by us or any of our affiliates.

E.  We will not make a duplicate payment under Coverage D8 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G.  The limit of liability under Coverage D8 is reduced by any amount paid to the same "insured" for the same accident under Coverage A or Coverage C.

**COVERAGE D9 - UNDERINSURED MOTORISTS (BODILY INJURY) NON-STACKED**

A.  Except as provided in paragraph C:

If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D9:

1.  The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

2.  Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B.  Except as provided in paragraph C:

If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D9, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C.  With respect to damages caused by the owner operator of an "underinsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1.  Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations or the Schedule of this endorsement for Coverage D9; or

4.  Vehicles involved in the accident.

D.  No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D9 and:

1.  Coverage A, Coverage C or Coverage D6 or Coverage D7 of this policy; or

2.  Any other personal auto policy issued to you by us or any of our affiliates.

E.  We will not make a duplicate payment under Coverage D9 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

G.  The limit of liability under Coverage D9 is reduced by any amount paid to the same "insured" for the same accident under Coverage A or Coverage C.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

First   The Uninsured Motorists Coverage or Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

Second  The policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the "insured" as a "named insured" or "family member".

1.  Under Coverage D7 or D9, when there is applicable insurance available under the First priority:

a.  The limit of liability applicable to the vehicle the "insured" was "occupying" under

Case ID: 190802259

   the policy in the First priority, shall first
   be exhausted; and

   b. The maximum recovery under all policies
   in the Second priority may equal but not
   exceed the highest applicable limit of lia-
   bility for any one vehicle under any one
   policy providing coverage to you or any
   "family member".

2. Under Coverage D7 or D9, when there is no
   applicable insurance available under the First
   priority, the maximum recovery under all poli-
   cies in the Second priority shall not exceed the
   highest applicable limit for any one vehicle un-
   der any one policy.

If two or more policies have equal priority, the in-
surer against whom the claim is first made shall
process and pay the claim as if wholly responsible
for all insurers with equal priority. The insurer is
thereafter entitled to recover contribution pro rata
from any other insurer for the benefits paid and the
costs of processing the claim.

## ARBITRATION

A. If we and an "insured" do not agree.

1. Whether the owner or operator of the "unin-
   sured motor vehicle" or "underinsured motor
   vehicle" is legally liable to that "insured" for
   "bodily injury" sustained and caused by an ac-
   cident; or

2. The amount of the damages sustained by the
   "insured";

either party may make a written demand for arbi-
tration.

Issues or questions seeking to interpret language of
this policy or to determine whether or how cover-
age applies to an "insured" may not be arbitrated.
Those issues and questions may not be part of any
submission to the panel of arbitrators. This in-
cludes, but is not limited to, any issue or questions
on:

1. any person's status as an "insured";

2. the stacking of coverages or the amount of
   coverage available;

3. the sufficiency of the coverage election made
   for this policy or any other coverage election
   made, or claimed to have been made, by any
   person;

4. the residency or domicile of any person, in-
   cluding any person claiming to be an "in-
   sured";

5. the applicability of a statute of limitations;

6. our rights and duties;

7. any "insured's" rights and duties under this
   policy;

8. the interpretation of defined terms, the insuring
   agreement, exclusions, the limits of liability,
   this arbitration clause, or any other of the poli-
   cy's terms and conditions; or

9. the degree to which either party is bound by a
   decision made by an arbitration panel which a
   party claims is outside the scope of the arbitra-
   tion.

B. In the event that a valid written demand for arbitra-
   tion is made, each party will select an arbitrator
   who, at the time of the accident, maintained their
   principal place of business in the county in which
   the arbitration is to be conducted. However, a par-
   ty may select an arbitrator from outside that coun-
   ty if the other party consents to such a selection.
   The two arbitrators will select a third arbitrator
   who, at the time of the accident, maintained their
   principal place of business in the county in which
   arbitration is to be conducted. However, the two
   arbitrators may select an arbitrator from outside
   that county if the two arbitrators both consent to
   such a selection. If the two arbitrators cannot agree
   on the third arbitrator within thirty (30) days of the
   valid written demand for arbitration, either party
   may request a court in the county where the arbi-
   tration is to be conducted to make the selection,
   and such arbitrator must have maintained their
   principal place of business in the county where the
   arbitration is to be conducted, unless the two arbi-
   trators selected by the parties agree otherwise.

C. Each party will:

1. Pay the expenses it incurs; and

2. Bear equally the reasonable expenses of the
   third arbitrator.

D. Unless agreed otherwise, arbitration will be con-
   ducted in the county in which the "insured" lived at
   the time of the accident. A decision of the arbitra-
   tors will be binding as to:

1. Whether the owner or operator of the "unin-
   sured motor vehicle" or "underinsured motor

vehicle" is legally liable to that "insured" for "bodily injury" sustained and caused by an accident; or

2. The amount of the damages sustained by the "insured".

A decision shall not be binding with respect to any issue not properly the subject of arbitration.

Either party may stay arbitration pending final resolution of whether an issue is properly subject to arbitration. The execution of any judgment or award may also be stayed until final resolution is reached on whether an issue was properly the subject of arbitration.

**GENERAL PROVISIONS**

The **GENERAL PROVISIONS** of the policy are amended as follows:

A. The following is added to the **OUR RIGHT TO RECOVER PAYMENT** provisions:

C. Our rights do not apply under Paragraph A. with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

B. The following is added to the **TWO OR MORE AUTO POLICIES** provisions:

1. This provision does not apply to Coverage D6 - Uninsured Motorists (Bodily Injury) Stacked; or Coverage D8 - Underinsured Motorists (Bodily Injury) Stacked.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D6 - Uninsured Motorists (Bodily Injury) Stacked; or Coverage D8 - Underinsured Motorists (Bodily Injury) Stacked.

Endorsement Symbol Number
A37045

Case ID: 190802259

Schedule

(Applicable only if not shown in the Declarations)

| Coverage | Description of Vehicle | Limits of Liability | Premium |
|---|---|---|---|

Endorsement Symbol Number
A37045

Case ID: 190802259

## ROADSIDE ASSISTANCE COVERAGE

**All provisions of the policy apply unless modified by this endorsement.**

**Roadside Assistance Coverage**

If the Declarations indicates that Roadside Assistance Coverage applies to a specific "your covered auto", our "authorized service provider" will arrange to provide the following services when that "your covered auto" is accessible and disabled within 100 feet of a paved public road, or on an accessible driveway, accessible private road or in an accessible parking facility:

1. Towing or flatbed services;
2. Winching;
3. Providing jump start for a dead battery;
4. Changing a flat tire;
5. Key lock-out service; and
6. Delivering of supplies, including oil, water, other fluids and fuel.

We will pay for the services specified in 1. through 6. above:

1. Up to the mileage limit shown in the Declarations for that "your covered auto"; or
2. To the nearest qualified repair facility selected by our "authorized service provider" when there is no repair facility available within the mileage limit shown in the Declarations under Roadside Assistance Coverage for that "your covered auto".

We do not cover the cost of supplies, replacement parts, fuel, other fluids, or any labor performed at a service or repair facility.

Our "authorized service provider" will determine whether a vehicle, driveway, private road or parking facility is accessible.

For policies with a:

1. Six month policy term, coverage is limited to no more than 4 disablements for each vehicle shown in the Declarations to which this coverage applies.
2. Twelve month policy term, coverage is limited to no more than 8 disablements for each vehicle shown in the Declarations to which this coverage applies.

If there is a disablement to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations. However the disablement of a "non-owned auto" shall not increase the maximum number of disablements as shown in 1. or 2. above.

In the event:

1. You decide not to use our "authorized service provider"; or
2. Our "authorized service provider" is unable to arrange Roadside Assistance services;

we will reimburse you only for reasonable charges as determined by us. Receipts for any of these services must be provided to us for consideration of payment.

As used in this endorsement:

"Authorized service provider" means a service provider contracted by us, at no charge to you, to procure roadside assistance services on our behalf and as described in this endorsement.

Roadside Assistance Coverage through our "authorized service provider" is available in:

1. The continental United States;
2. Alaska;
3. Hawaii; and
4. Canada.

No deductible applies to this coverage.

Endorsement Symbol Number
A00450



Travelers Property Casualty
A member of citigroup

# *Automobile Policy Booklet*
# *from Travelers Property Casualty*

TOC10284

# YOUR PERSONAL AUTO POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
    **Your Name and Address**
    **Your Auto or Trailer**
    **Policy Period**
    **Coverages and Amounts of Insurance**

Beginning On Page

| | | Beginning On Page |
|---|---|---|
| | AGREEMENT | 1 |
| | DEFINITIONS | 1 |
| **LIABILITY** | Insuring Agreement | 2 |
| | Supplementary Payments | 2 |
| | Exclusions | 2 |
| | Limit of Liability | 4 |
| | Out of State Coverage | 4 |
| | Financial Responsibility | 4 |
| | Other Insurance | 4 |
| **MEDICAL PAYMENTS** | Insuring Agreement | 5 |
| | Exclusions | 5 |
| | Limit of Liability | 6 |
| | Other Insurance | 6 |
| **UNINSURED MOTORISTS** | Insuring Agreement | 6 |
| | Exclusions | 7 |
| | Limit of Liability | 7 |
| | Other Insurance | 8 |
| | Arbitration | 8 |
| **DAMAGE TO YOUR AUTO** | Insuring Agreement | 8 |
| | Transportation Expenses | 9 |
| | Exclusions | 10 |
| | Limit of Liability | 11 |
| | Payment of Loss | 11 |
| | Loss Payable Clause | 11 |
| | No Benefit to Bailee | 11 |
| | Other Sources of Recovery | 11 |
| | Appraisal | 11 |
| **DUTIES AFTER AN ACCIDENT OR LOSS** | General Duties | 12 |
| | Additional Duties for Uninsured Motorists Coverage | 12 |
| | Additional Duties for Collision and Comprehensive Coverages | 12 |
| **GENERAL PROVISIONS** | Bankruptcy | 12 |
| | Changes | 12 |
| | Fraud | 13 |
| | Legal Action Against Us | 13 |
| | Our Right to Recover Payment | 13 |
| | Policy Period and Territory | 13 |
| | Termination | 13 |
| | Transfer of your Interest in this Policy | 14 |
| | Two or More Auto Policies | 15 |

**Edition 8 of Policy Forms 101, 102, and LP**

Case ID: 190802259

# PERSONAL AUTO POLICY

**Travelers Property Casualty Companies**
Hartford, Connecticut
(Each a Stock Insurance Company)

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages you have selected. These are shown by premium entries in the Declarations. The Declarations is a part of this policy.

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

**B.** "We", "us" and "our" refer to the Company shown in the Declarations providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**J.** "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto; or

   b. a pickup or van.

This provision (J.2.) applies only if:

   a. you acquire the vehicle during the policy period;

   b. you ask us to insure it within 30 days after you become the owner; and

   c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

   a. you wish to add or continue Damage to Your Auto Coverages; or

   b. it is a pickup or van used in any "business" other than farming or ranching.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

broadest coverage we now provide for any ve-
hicle shown in the Declarations.

3.  Any "trailer" you own.

4.  Any auto or "trailer" you do not own while
used as a temporary substitute for any
other vehicle described in this definition
which is out of normal use because of its:

a.  breakdown;     d.  loss; or

b.  repair;        e.  destruction.

c.  servicing;

This provision (J.4.) does not apply to the
Damage To Your Auto Section.

---

# LIABILITY
## Coverage A - Bodily Injury
## Coverage B - Property Damage

**INSURING AGREEMENT**

**A.**  We will pay damages for "bodily injury" (Cover-
age A) or "property damage" (Coverage B) for
which any "insured" becomes legally responsible
because of an auto accident.  Damages include pre-
judgment interest awarded against the "insured".
We will settle or defend, as we consider appropri-
ate, any claim or suit asking for these damages.  In
addition to our limit of liability, we will pay all de-
fense costs we incur. Our duty to settle or defend
ends when our limit of liability for these coverages
has been exhausted. We have no duty to defend
any suit or settle any claim for "bodily injury" or
"property damage" not covered under this policy.

**B.**  "Insured" as used in these coverages means:

1.  You or any "family member" for the owner-
ship, maintenance or use of any auto or
"trailer".

2.  Any person using "your covered auto".

3.  For "your covered auto", any person or or-
ganization but only with respect to legal re-
sponsibility for acts or omissions of a person
for whom coverage is afforded under these
Liability Coverages.

4.  For any auto or "trailer", other than "your cov-
ered auto", any other person or organization
but only with respect to legal responsibility for
acts or omissions of you or any "family mem-
ber" for whom coverage is afforded under
these Liability Coverages. This provision
(B.4.) applies only if the person or organiza-
tion does not own or hire the auto or "trailer".

**SUPPLEMENTARY PAYMENTS**

In addition to our limit of liability, we will pay on be-
half of an "insured":

1.  Up to $250 for the cost of bail bonds required
because of an accident, including related traf-
fic law violations. The accident must result in
"bodily injury" or "property damage" covered
under this policy.

2.  Premiums on appeal bonds and bonds to re-
lease attachments in any suit we defend.

3.  Interest accruing after a judgment is entered in
any suit we defend. Our duty to pay interest
ends when we offer to pay that part of the
judgment which does not exceed our limit of
liability for these coverages.

4.  Up to $50 a day for loss of earnings, but not
other income, because of attendance at hear-
ings or trials at our request.

5.  Other reasonable expenses incurred at our re-
quest.

**EXCLUSIONS**

**A.**  We do not provide Liability Coverages for any
person:

1.  Who intentionally causes "bodily injury" or
"property damage".

2.  For "property damage" to property owned or
being transported by that person.

3.  For "property damage" to property:

a.  rented to; or

b.  used by; or

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

c.   in the care of;

that person.

This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

a.   selling;       d.   storing; or

b.   repairing;    e.   parking;

c.   servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

a.   you;

b.   any "family member"; or

c.   any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

a.   private passenger auto;

b.   pickup or van that you own; or

c.   "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

a.   is an insured under a nuclear energy liability policy; or

b.   would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a.   Nuclear Energy Liability Insurance Association;

b.   Mutual Atomic Energy Liability Underwriters; or

c.   Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverages for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto", which is:

a.   owned by you; or

b.   furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

a.   owned by any "family member"; or

b.   furnished or available for the regular use of any "family member".

However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

a.   owned by a "family member"; or

b.   furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a.   competing in; or

b.   practicing or preparing for;

any prearranged or organized racing or speed contest.

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

## LIMIT OF LIABILITY

### A. Single Liability Limit

1. If the Declarations show a single limit of liability for Coverage A and Coverage B combined, this limit is our maximum limit of liability for all damages for "bodily injury" and "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

   a. "Insureds";

   b. Claims made;

   c. Vehicles or premiums shown in the Declarations; or

   d. Vehicles involved in the auto accident.

2. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (A.2.) will not change our total limit of liability.

### B. Split Liability Limits

If the Declarations show separate limits of liability for Coverage A and Coverage B, the limit of liability shown in the Declarations for each person for Coverage A is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Coverage A is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Coverage B is our maximum limit of liability for all "property damage" resulting from any one auto accident. These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

### A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

### B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

## MEDICAL PAYMENTS
### Coverage C

**INSURING AGREEMENT**

A.  We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1.  Caused by accident; and

2.  Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B.  "Insured" as used in this coverage means:

1.  You or any "family member":

  a.  while "occupying"; or

  b.  as a pedestrian when struck by;

  a motor vehicle designed for use mainly on public roads or a trailer of any type.

2.  Any other person while "occupying" "your covered auto".

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any person for "bodily injury":

1.  Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2.  Sustained while "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (2.) does not apply to a share-the-expense car pool.

3.  Sustained while "occupying" any vehicle located for use as a residence or premises.

4.  Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5.  Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

  a.  owned by you; or

  b.  furnished or available for your regular use.

6.  Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

  a.  owned by any "family member"; or

  b.  furnished or available for the regular use of any "family member".

  However, this exclusion (6.) does not apply to you.

7.  Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8.  Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

  a.  private passenger auto;

  b.  pickup or van that you own; or

  c.  "trailer" used with a vehicle described in a. or b. above.

9.  Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

  a.  competing in; or

  b.  practicing or preparing for;

  any prearranged or organized racing or speed contest.

10. Caused by or as a consequence of:

  a.  discharge of a nuclear weapon (even if accidental);

  b.  war (declared or undeclared);

  c.  civil war;

  d.  insurrection; or

  e.  rebellion or revolution.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

Case ID: 190802259

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

    1. "Insureds";

    2. Claims made;

    3. Vehicles or premiums shown in the Declarations; or

    4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Coverage A or Coverage D.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Coverage A or Coverage D.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# UNINSURED MOTORISTS
## Coverage D

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

    1. Sustained by an "insured"; and

    2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this coverage means:

    1. You or any "family member".

    2. Any other person "occupying" "your covered auto".

    3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

    1. To which no bodily injury liability bond or policy applies at the time of the accident.

    2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limits for bodily injury liability must be less than the minimum limits for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

    3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

        a. you or any "family member";

        b. a vehicle which you or any "family member" are "occupying"; or

        c. "your covered auto".

    4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

        a. denies coverage; or

        b. is or becomes insolvent.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1.  Owned by or furnished or available for the regular use of you or any "family member".

2.  Owned or operated by a self-insurer under any applicable motor vehicle law.

3.  Owned by any governmental unit or agency.

4.  Operated on rails or crawler treads.

5.  Designed mainly for use off public roads while not on public roads.

6.  While located for use as a residence or premises.

## EXCLUSIONS

A.  We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1.  While "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2.  If that person or the legal representative settles the "bodily injury" claim without our consent.

3.  While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4.  Using a vehicle without a reasonable belief that that person is entitled to do so.

B.  This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1.  workers' compensation law; or

2.  disability benefits law.

C.  We do not provide Uninsured Motorists Coverage for punitive or exemplary damages including legal costs related thereto.

## LIMIT OF LIABILITY

A.  **Single Limit**

If the Declarations show a single limit of liability for Coverage D, this limit is our maximum limit of liability for all damages for "bodily injury" result-

ing from any one accident. This is the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the accident.

B.  **Split Limits**

If the Declarations show separate limits of liability for each person and each accident, the limit of liability shown for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. These limits are the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the accident.

C.  Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1.  Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Coverage A; and

2.  Paid or payable because of the "bodily injury" under any of the following or similar law:

    a.  workers' compensation law; or

    b.  disability benefits law.

D.  Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Coverage A.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**ARBITRATION**

A. If we and an "insured" do not agree:

    1. Whether that person is legally entitled to recover damages under this coverage; or

    2. As to the amount of damages which are recoverable by that "insured" from the owner or operator of an "uninsured motor vehicle".

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

    1. Pay the expenses it incurs; and

    2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

    1. Whether the "insured" is legally entitled to recover damages; and

    2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

D. Instead of this method, we and the "insured" may agree to use another method of arbitration.

---

## DAMAGE TO YOUR AUTO
### Coverage E - Collision
### Coverage F - Comprehensive
### (Other than Collision)
### Coverage G - Extended Transportation Expenses
### Coverage I - Towing and Labor Costs

---

**INSURING AGREEMENT**

A. **Collision and Comprehensive (Other than Collision).** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment. We will pay for such loss to "your covered auto" minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

    1. "Collision" only if the Declarations indicate that Coverage E - Collision is provided for that auto.

    2. Other than "collision" only if the Declarations indicate that Coverage F - Comprehensive is provided for that auto.

If there is such a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations. We will not subtract any deductible amount from the amount we will pay for a loss to a "non-owned auto".

B. **Extended Transportation Expenses.** When there is a loss to a "your covered auto" described in the Declarations for which a specific premium charge indicates that Coverage G - Extended Transportation Expenses is afforded, or to a "non-owned auto", we will pay, without application of a deductible, up to the amount per day to a maximum amount as shown in the Declarations for:

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

Case ID: 190802259

1. Transportation expenses incurred by you.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto".

This coverage applies only if:

1. "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours; and

2. The loss is caused by "collision" or is covered under Coverage F - Comprehensive of this policy.

However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto". Such coverage is provided under Coverage F of this policy.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

C. **Towing and Labor Costs.** We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the limit of liability shown in the Declarations for Coverage I - Towing and Labor Costs as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

D. **"Collision"** means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object. Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or Earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision" you may elect to have it considered a loss caused by "collision".

E. **"Non-owned auto"** means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

**TRANSPORTATION EXPENSES**

In addition, under Coverage F, we will pay, without application of a deductible, up to the greater of the following amounts:

1. $15 per day, to a maximum of $450; or

2. For a "your covered auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for that specific "your covered auto"; or

3. For a "non-owned auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for any one "your covered auto".

This applies only in the event of the total theft of "your covered auto" or a "non-owned auto". The coverage applies to a "your covered auto" only when the Declarations show that Coverage F is provided for that specific "your covered auto". The coverage applies to a "non-owned auto" if the Declarations show that Coverage F is provided for any "your covered auto".

We will pay:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto"; or

2. Loss of use expenses for which you become legally responsible in the event of a total theft of a "non-owned auto".

We will pay only those expenses incurred during the period:

1. Beginning 48 hours after the theft; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

2. Ending when "your covered auto" or the "non-owned auto" is returned to use, or, we pay or offer to pay for its loss.

**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to equipment designed for the reproduction of sound and any accessories used with such equipment. This exclusion (4.) does not apply if the equipment is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. TV antennas;

   b. awnings or cabanas; or

   c. equipment designed to create additional living facilities.

9. Loss to any of the following or their accessories:

   a. citizens band radio;

   b. two-way mobile radio;

   c. telephone; or

   d. scanning monitor receiver.

   This exclusion (9.) does not apply if the equipment is permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto". This opening must be normally used by the auto manufacturer for the installation of a radio.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    a. selling;          d. storing; or

    b. repairing;        e. parking;

    c. servicing;

    vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

13. Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by government or civil authorities because you or any "family member":

    a. engaged in illegal activities; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (13.) does not apply to the interests of Loss Payees in "your covered auto".

14. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. competing in; or

b. practicing or preparing for;

any prearranged or organized racing or speed contest.

15. Loss to, or loss of use of, a "non-owned auto" rented by:

a. you; or

b. any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

Note: Our Limit of Liability under Damage to Your Auto does not extend to any loss in market or resale value which may result from a direct and accidental loss to "your covered auto" or any "non-owned auto".

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will mail the loss payee written notice at least 10 days before the effective date of cancellation.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the owner of the "non-owned auto";

2. any other applicable physical damage insurance;

3. any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A deci-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

sion agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

### ADDITIONAL DUTIES FOR UNINSURED MOTORISTS COVERAGE

A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit and run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

### ADDITIONAL DUTIES FOR COLLISION AND COMPREHENSIVE COVERAGES

A person seeking coverage for Collision or Comprehensive (Other than Collision) must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

3.  The place of principal garaging of insured vehicles;

4.  Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C.  If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1.  A subsequent edition of your policy; or

2.  An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A.  No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under the Liability Coverages, no legal action may be brought against us until:

1.  We agree in writing that the "insured" has an obligation to pay; or

2.  The amount of that obligation has been finally determined by judgment after trial.

B.  No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A.  If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1.  Whatever is necessary to enable us to exercise our rights; and

2.  Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply, under the Damage to Your Auto Coverages, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B.  If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1.  Hold in trust for us the proceeds of the recovery; and

2.  Reimburse us to the extent of our payment less reasonable attorney fees and a proportionate share of the cost of recovery.

## POLICY PERIOD AND TERRITORY

A.  This policy applies only to accidents and losses which occur:

1.  During the policy period as shown in the Declarations; and

2.  Within the policy territory.

B.  The policy period, and each successive policy period, begins and ends at 12:01 a.m. standard time at your address.

C.  The policy territory is:

1.  The United States of America, its territories or possessions;

2.  Puerto Rico; or

3.  Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A.  Cancellation. This policy may be cancelled during the policy period as follows:

1.  The named insured shown in the Declarations may cancel by:

   a.  returning this policy to us; or

   b.  giving us advance written notice of the date cancellation is to take effect.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

Case ID: 190802259

2.  We may cancel by mailing to the named insured shown in the Declarations at the address shown there:

   a.  at least 10 days notice of cancellation:

     (1)  if cancellation is for nonpayment of premium; or

     (2)  if notice is mailed during the first 60 days this policy is in effect and this is not a continuation policy; or

   b.  at least 30 days notice in all other cases.

3.  After this policy is in effect for 60 days, or if this is a continuation policy, we will cancel only:

   a.  for nonpayment of premium; or

   b.  if your driver's license or that of:

     (1)  any driver who lives with you; or

     (2)  any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred:

     (1)  during the policy period; or

     (2)  since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c.  if the policy was obtained through material misrepresentation.

4.  Nonpayment of Premium. Nonpayment of premium shall mean failure to pay any premium or premium installment when due whether payable directly to us or through a premium financing plan or credit extension.

**B. Non Renewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown there. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

**C. Automatic Termination.** If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1.  If the law in effect in your state at the time this policy is issued or continued:

   a.  requires a longer notice period;

   b.  requires a special form or procedure for giving notice; or

   c.  modifies any of the stated termination reasons;

   we will comply with those requirements.

2.  We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3.  If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4.  The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1.  The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2.  The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the rep-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case ID: 190802259

resentative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the next anniversary of the policy's original effective date.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This policy is signed for the member company of Travelers which is the insurer under this policy.

James M. Michener
Secretary

Jerry T. Shroat
Chief Executive Officer
Personal Lines

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

Case ID: 190802259



Case ID: 190802259

# EXHIBIT "C"

Case ID: 190802259

Case ID: 190802259

# ACORD PERSONAL AUTO APPLICATION

DATE (MM/DD/YY): 08/19/2002

**PRODUCER**
PHONE (610)944-7722
FAX (610)944-8804
Campbell Kautter Insurance Associates, Inc.
32 W. Main Street
Fleetwood, PA 19522

CODE: 049880  SUBCODE:
AGENCY CUSTOMER ID: 00002693

**APPLICANT'S NAME AND MAILING ADDRESS (include county & ZIP)**
TAMMIE D. BROWN
352 CASSIDY COURT

BLANDON, PA 19510

FACILITY CODE:

TELEPHONE NUMBER (610)916-8837

**CO/PLAN**
Travelers Pers Security Ins Co

POL#: 9472611051011
ACCT#:

| NEW | EFFECTIVE DATE | EXPIRATION DATE | X | DIRECT BILL | PAYMENT PLAN |
| RNWL | 07/07/2002 | 01/07/2003 | | AGENCY BILL | |

**RESIDENCE** | CURRENT RESIDENCE IS | OWNED | RENTED
YRS AT CURR/PREV: PREVIOUS ADDRESS (if less than 3 years)

**GARAGING LOCATION (if different from above) (indicate ZIP)**
VEH 352 CASSIDY COURT
001 BLANDON, PA 19510

TOTAL NUMBER OF VEHICLES IN HOUSEHOLD

## VEHICLE DESCRIPTION

| VEH | YEAR | MAKE, MODEL AND BODY TYPE | VIN | REGISTERED STATE | HP/CC | PURCH | USED |
|---|---|---|---|---|---|---|---|
| 1 | 1997 | PLYM, NEON HIGHL, Private passenger auto make | 1P3ES47Y7VD148880/PA | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |

| VEH | COST NEW | SYMBOL AGE GRP | TERR | PATH'WY DAYS/WEEK | USAGE | PERFORM | ANTI POOL | ODOMETER READING | ANNUAL MILEAGE | DRIVER USE % | CLASS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 11 | 2222 | | | | | | 13000 | | 426200 |
| 2 | | | | | | | | | | | |

| VEH | PASSIVE SEAT BELT | AIR BAG | ANTI-LOCK BRK/BOTH | ANTI-THEFT DEVICES | CREDITS AND SURCHARGES | VEH | PASSIVE SEAT BELT | AIR BAG | ANTI-LOCK BRK/BOTH | ANTI-THEFT DEVICES | CREDITS AND SURCHARGES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | A | | | No anti-theft | PASSR | | | | | | |
| 2 | | | | | | | | | | | |

## COVERAGES/PREMIUMS

| COVERAGES | LIMITS OF LIABILITY | | VEHICLE 1 | VEHICLE 2 | VEHICLE 3 | VEHICLE 4 |
|---|---|---|---|---|---|---|
| SINGLE LIMIT LIABILITY (CSL) | EA ACCIDENT | $ | $ | $ | $ | $ |
| BODILY INJURY LIABILITY | $ 100,000 EA PERSON $ 300,000 EA ACCIDENT | | $ 81.00 | $ | $ | $ |
| PROPERTY DAMAGE LIABILITY | $ 50,000 EA ACCIDENT | DEDUCTIBLE | $ 34.00 | $ | $ | $ |
| PERSONAL INJ PROTECTION | | DEDUCTIBLE | $ | $ | $ | $ |
| ADDL PERSONAL INJ PROTECTION $ | TOTAL $ | WORK LOSS $ | MED EXP | $ | $ | $ |
| MEDICAL PAYMENTS | EA PERSON | $ | $ | $ | $ | $ |
| UNINSURED MOTORISTS | CSL/BI $ 50,000 EA PERSON $ 100,000 EA ACCIDENT | | $ 7.00 | $ | $ | $ |
| | PD $ EA ACCIDENT | | $ | $ | $ | $ |
| UNDERINSURED MOTORISTS | CSL/BI $ 50,000 EA PERSON $ 100,000 EA ACCIDENT | | $ 16.00 | $ | $ | $ |
| | PD $ EA ACCIDENT | | $ | $ | $ | $ |
| COMPREHENSIVE | DED $ 50 | $ 3 $ | 4 $ | $ 36.00 | $ | $ |
| COLLISION | DED $ 500 | $ 3 $ | 4 $ | $ 106.00 | $ | $ |
| ADV UNLESS AMOUNT STATED | $ | $ 3 $ | 4 $ | $ | $ | $ |
| TOWING & LABOR | $ 25 | $ 3 $ | 4 $ | $ 2.00 | $ | $ |
| TRANSPORTATION EXPENSES | $ | $ 3 $ | 4 $ | $ | $ | $ |
| ADDITIONAL COVERAGES/ENDORSEMENTS (Leave blank, see dollar amount) | | TOTAL/VEHICLE | $ 294.00 | $ | $ | $ |
| VEH 1: PIP-First party benefits, Medical Expense, PIP-Work loss benefits | | ESTIMATED TOTAL | DEPOSIT | BALANCE DUE | |
| | | | $ 294.00 | $ 73.50 (min) | $ | $ 294.00 |

## RESIDENT AND DRIVER INFORMATION

| NAME | SEX | MAR STAT | RELATED TO APPLICANT | DATE OF BIRTH | OCCUPATION | DATE LIC | GOOD STUDENT | DRIVER TRAIN | CSL DATE | DRIVERS LICENSE NUMBER | LICENSED STATE | SOCIAL SECURITY # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAMMIE | F | S | | 10/29/1968 | | | | | | 21420380 | PA | 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 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

## ACCIDENT/CONVICTION (INDIVIDUAL CARRIERS MAY REQUIRE ADDITIONAL INFORMATION)

HAS ANY DRIVER SHOWN ABOVE HAD AN ACCIDENT OR BEEN CONVICTED OF A MOVING VIOLATION WITHIN THE LAST _____ YEARS?  YES _____ NO _____  IF YES, INDICATE BELOW

| DRV | DATE OF ACCIDENT/CONVICTION | DESCRIPTION OF ACCIDENT OR CONVICTION | ACCIDENT/CONVICTION | YES | NO | AMT PAID BY CO |
|---|---|---|---|---|---|---|
| | | | | | | |

ACORD 81 PA (3/95)  PLEASE COMPLETE REVERSE SIDE  © ACORD CORPORATION 1995

Case ID: 190802259

## ADDITIONAL INTEREST

| Veh # | ADDL INT | NAME AND ADDRESS | | LOAN NUMBER |
|---|---|---|---|---|
| | LOSS PAY | | | |
| Veh # | ADDL INT | NAME AND ADDRESS | | |
| | LOSS PAY | | | LOAN NUMBER |

## EMPLOYMENT INFORMATION

| APPLICANT'S EMPLOYER | ADDRESS OF EMPLOYMENT | WORK PHONE NUMBER | YRS EMPL |
|---|---|---|---|
| CO-APPLICANT'S EMPLOYER | ADDRESS OF EMPLOYMENT | WORK PHONE NUMBER | YRS EMPL |

## PRIOR COVERAGE

| PRIOR CARRIER AND PRODUCER | # OF YEARS W/ COMPANY | PRIOR POLICY NUMBER/EXPIRATION DATE | |
|---|---|---|---|
| STATE FARM | | 701 1674A0738D | 07/07/2002 |

## GENERAL INFORMATION

EXPLAIN ALL "YES" RESPONSES IN REMARKS

| | YES | NO | | YES | NO |
|---|---|---|---|---|---|
| 1. WITH THE EXCEPTION OF ANY ENCUMBRANCES, ARE ANY VEHICLES NOT SOLELY OWNED BY AND REGISTERED TO THE APPLICANT? | | X | 9. ANY HOUSEHOLD MEMBER IN MILITARY SERVICE? (Driver number) | | X |
| 2. ANY CAR MODIFIED/SPECIAL EQUIPMENT? (include customized vans/pickups) | | X | 10. ANY DRIVERS LICENSE BEEN SUSPENDED/REVOKED? | | X |
| 3. ANY EXISTING DAMAGE TO VEHICLE? (include damaged glass) | | X | 11. ANY DRIVER HAVE PHYSICAL/MENTAL IMPAIRMENT? | | X |
| 4. ANY OTHER LOSSES INCURRED (not shown in Accident/Conviction area)? | | X | 12. ANY FINANCIAL RESPONSIBILITY FILINGS? (Driver number and date of filing) | | X |
| 5. ANY CAR KEPT AT SCHOOL? | | X | 13. HAS INSURANCE BEEN TRANSFERRED WITHIN AGENCY? | | X |
| 6. ANY CAR PARKED ON STREET? | | X | 14. ANY COVERAGE DECLINED, CANCELLED, OR NON-RENEWED DURING THE LAST 3 YEARS? | | X |
| 7. ANY OTHER AUTO INSURANCE IN HOUSEHOLD? (include any provided by employee) | | X | 15. IS THIS BROKERED BUSINESS TO THE AGENT? | | X |
| 8. ANY OTHER INSURANCE WITH THIS COMPANY? (list policy number) | | X | | | |

## REMARKS

| ATTACHMENTS |
|---|
| STATE SUPPLEMENT |
| NO-FAULT APPLICATION |
| YOUNG DRIVER QUESTIONNAIRE |
| DRIVER TRAINING CERTIFICATE |
| GOOD STUDENT CERTIFICATE |
| ANTI-THEFT DEVICE CERTIFICATE |
| MEDICAL STATEMENT |
| MOTOR VEHICLE REPORT |
| PHOTOGRAPH |
| BILL OF SALE |

FOR COMPANY USE ONLY

## BINDER/SIGNATURES

| INSURANCE BINDER | | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: |
|---|---|---|
| EFFECTIVE DATE | EXPIRATION DATE | THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |
| 07/07/2002 | 01/07/2003 | THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE |
| TIME | TIME | COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY |
| 12:01 AM | 12:01 AM | BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN |
| | NOON | REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A |
| COVERAGE IS NOT BOUND | | PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. |

NOTICE TO THE APPLICANT: THE FAIR CREDIT REPORTING ACT REQUIRES THAT WE ADVISE YOU THAT THE COMPANY MAY ORDER AN INVESTIGATIVE CONSUMER REPORT AS PART OF THE UNDERWRITING PROCESS. IF SUCH A REPORT IS ORDERED, THE COMPANY WILL NOTIFY YOU, YOU HAVE THE RIGHT TO REQUEST INFORMATION ON THE NATURE AND SCOPE OF SUCH A REPORT. ANY INFORMATION DEVELOPED WILL BE HELD IN THE STRICTEST CONFIDENCE.

ANY PERSON WHO KNOWINGLY PROVIDES FALSE INFORMATION IN AN APPLICATION FOR INSURANCE WITH THE INTENT TO DEFRAUD AN INSURANCE COMPANY OR ANOTHER PERSON, OR WHO CONCEALS ANY INFORMATION CONCERNING A MATERIAL FACT FOR THE PURPOSE OF MISLEADING, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME.

APPLICANT'S STATEMENT: I HAVE READ THE ABOVE APPLICATION AND I DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF ALL OF THE FOREGOING STATEMENTS ARE TRUE. IN ADDITION, IF THE AUTO PLAN OR COMPANY DESIGNATED IN THIS APPLICATION IS NON-STANDARD, I CERTIFY THAT I UNDERSTAND THE RATES FOR THIS COVERAGE ARE HIGHER THAN NORMAL, AND THAT THEY ARE ACCEPTABLE TO ME AS I HAVE BEEN UNABLE TO OBTAIN COVERAGE DESIRED THROUGH THE NORMAL INSURANCE MARKET.

PRODUCER'S STATEMENT: I CERTIFY TO THE BEST OF MY KNOWLEDGE AND BELIEF THAT THE SIGNATURE OF THE APPLICANT IS THE PERSONAL SIGNATURE OF THE APPLICANT.

| | | HOW LONG HAVE YOU KNOWN THE APPLICANT? |
|---|---|---|

I UNDERSTAND THAT THE COVERAGE SELECTION AND LIMIT CHOICES INDICATED HERE OR IN ANY STATE SUPPLEMENT WILL APPLY TO ALL FUTURE POLICY RENEWALS, CONTINUATIONS AND CHANGES UNLESS I NOTIFY YOU OTHERWISE IN WRITING.

| APPLICANT'S SIGNATURE | Tammie D. Brown | DATE (MM/DD/YY) 06/21/02 | PRODUCER'S SIGNATURE | Gregory A. Hart |
|---|---|---|---|---|

**SUPPLEMENTARY AUTOMOBILE APPLICATION - PENNSYLVANIA**

(To be completed by the Named Insured or Applicant)

**Travelers**

| Name | Policy Number (if Not New Business) |
|---|---|
| TAMMIE D. BROWN | 947261105 101 1 |

Address: 352 CASSIDY COURT   BLANDON   PA   19510

## PENNSYLVANIA NOTICE
## IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1)    Medical benefits, up to at least $100,000.

(1.1)  Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2)    Income loss benefits, up to at least $2,500 per month up to a maximum of at least $50,000.

(3)    Accidental death benefits, up to at least $25,000.

(4)    Funeral benefits, $2,500.

(5)    As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6)    Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected. If you have any questions or you do not understand all of the various options available to you, contact your agent or company. If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

| Signature of Named Insured | Date |
|---|---|
| Tammie D. Brown | 06-21-02 |

THIS FORM MUST BE SIGNED AND RETURNED. PLEASE TAKE THE TIME TO REVIEW AND UNDERSTAND THE VARIOUS COVERAGES, LIMITS, AND OPTIONS AVAILABLE. THEN INDICATE YOUR CHOICES ON THE FOLLOWING PAGES.

Case ID: 190802259

## PENNSYLVANIA TORT OPTION SELECTION

**Tort Option Selection:** You have two options. The first is called the "limited tort" option. By choosing this option, you save the most money by agreeing to limit your right to sue for pain and suffering. Even if you choose this option, you still retain a full right to sue for pain and suffering if you sustain a serious injury or if you are injured by an uninsured motorist, a vehicle registered out of state or a drunk driver who causes an accident. And, you are never, under any circumstances, barred from suing for your unpaid economic losses such as medical bills or loss of income. A "serious injury" is defined in the law as a personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement.

The second option is called the "full tort" option. By choosing this option, you save less money because you retain your present unlimited ability to sue for pain and suffering in an accident.

The "Pennsylvania Tort Option Selection Notice to Named Insureds" form provided on the next page explains these options and provides a cost comparison between what your premium would be with the "limited tort" option (Paragraph A) or with the "full tort" option (Paragraph C).

To choose your tort option, follow the instructions below.

The law permits you to select a tort option by signing your name on the "Pennsylvania Tort Option Selection Notice To Named Insureds" form on the next page.

1. If you want the "limited tort" option, sign and date Signature Line I. Otherwise, the law will automatically assign you to the "full tort" option.

2. If you want the "full tort" option, sign and date Signature Line II. If you make no selection, you will be considered to have chosen the "full tort" option and your policy will automatically reflect the "full tort" option and premium.

Case ID: 190802259

## PENNSYLVANIA TORT OPTION SELECTION

### NOTICE TO NAMED INSUREDS

A. "Limited Tort" Option – The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy, or unless one of several other exceptions noted in the policy applies. The semi-annual premium for the limits you have selected for this "limited tort" option is _____

Please note, the minimum limits required by the laws of the Commonwealth of Pennsylvania are: Bodily injury, $15,000 each person, $30,000 each accident; Property Damage, $5,000 each accident; and First Party Medical, $5,000.

Additional coverages under this option are available at additional cost.

B. If you wish to choose the "limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen "full tort" coverage as described in paragraph C and you will be charged the "full tort" premium.

I wish to choose the "limited tort" option described in paragraph A.

Signature Line I. _____

    Named Insured                                                    Date

C. "Full Tort" Option – The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. The semi-annual premium for the limits you have selected for this "full tort" option is _____

Please note, the minimum limits required by the laws of the Commonwealth of Pennsylvania are: Bodily injury, $15,000 each person, $30,000 each accident; Property Damage, $5,000 each accident; and First Party Medical, $5,000.

Additional coverages under this option are available at additional cost.

D. If you wish to choose the "full tort" option described in paragraph C, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "full tort" coverage as described in paragraph C and you will be charged the "full tort" premium.

Signature Line II. _Tammie D Brown_____ _06/21/2002_____

    Named Insured                                                    Date

E. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

## PENNSYLVANIA FIRST PARTY BENEFITS COVERAGE

## ELECTION OF LIMITS FORM

### BASIC FIRST PARTY BENEFIT - COVERAGE QA/QB

Basic First Party Benefits (FPB) includes coverage for medical treatment and rehabilitative services provided after an accident in which the insured, insured's family or passengers are injured in the insured's car. FPB also provides protection if the insured or a family member is struck by a car while walking. FPB will always be provided on policies as mandated by the Commonwealth of Pennsylvania.

QA indicates that the limited tort option was selected.

QB indicates that the full tort option was selected.

The maximum limit for medical expenses provided for Basic First Party Benefits is $5,000 for any one person injured in any one accident.

### ADDED FIRST PARTY BENEFITS - COVEAGE R

Also available for an additional premium are "Added First Party Benefits" which are summarized below. Please complete and sign this form if additional coverage is desired. Note: Even if you do not want any additional coverages, this form must be signed and returned.

**Increased Medical Expenses Benefits**
(Increases the basic medical to the limit specified below)

| Option | Amount |
|--------|--------|
| ☒ A4 | $ 10,000 |
| ☐ A5 | $ 25,000 |
| ☐ A6 | $ 50,000 |
| ☐ A7 | $100,000 |

**Income Loss Benefits**
(Amount payable for lost income up to 80% of gross income)

| Option | Maximum Amount | Monthly Amount |
|--------|----------------|----------------|
| ☐ B5 | $ 5,000 | $1,000 |
| ☐ B6 | $15,000 | $1,000 |
| ☐ B4 | $15,000 | $1,500 |
| ☒ B7 | $25,000 | $1,500 |
| ☐ B8 | $50,000 | $2,500 |

**Funeral Expenses Benefits**
(Reasonable expense for funeral, burial, or cremation. Expense must be incurred within 24 months of the accident date)

| Option | Amount |
|--------|--------|
| ☐ C6 | $1,500 |
| ☐ C7 | $2,500 |

**Accidental Death Benefits**
(Amount payable if death occurs as a result of an accident within 24 months of the accident date)

| Option | Amount |
|--------|--------|
| ☐ D6 | $ 5,000 |
| ☐ D7 | $10,000 |
| ☐ D8 | $25,000 |

**Combination First Party Benefits**
(Benefits for basic medical, increased medical, income loss, funeral expense and accidental death are combined into one total limit. This is the most we will pay as a result of any one accident. Funeral expense is limited to $2,500 and Accidental Death to $10,000 for options H & J and $25,000 for options K & L.)

| Option | Total Limit |
|--------|-------------|
| ☐ H | $ 50,000 |
| ☐ J | $100,000 |
| ☐ K | $177,500 |
| ☐ L | $277,500 |

**Extraordinary Medical Benefits**
(Additional medical payments coverage up to $1,000,000 after the first $100,000 of medical is paid by or for any insured.)

| Option | Amount |
|--------|--------|
| ☐ Coverage W | $1,000,000 |

**NOTE:** We strongly urge you to purchase Increased Medical Expenses benefits, option A7, if you purchase coverage W, since Coverage W does not pay for the first $100,000 in medical bills.

I have personally reviewed and completed this form. I understand that this coverage election will apply to all future renewals, continuations, and changes in my policy unless I notify Travelers in writing of a new election.

Signature of Named Insured _Tammie D Brown_

Date _6/21/2002_

PL-2432 Rev. 7-98

Page 4 of 10

## PENNSYLVANIA UNINSURED MOTORISTS COVERAGE

**Note: This form only needs to be completed if you wish to reject uninsured motorists coverage.**

Uninsured motorists coverage is insurance protection you may purchase that protects you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage. This coverage is optional. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want this coverage, the insured named first on the application or the declarations page must sign and date the rejection of uninsured motorists protection below. If you want to keep this coverage, do not sign this waiver and go to the next page.

## REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

_____
**Signature of First Named Insured**

_____
**Date**

PL-2432 Rev. 7-99

Page 5 of 10

Case ID: 190802259

---

### PENNSYLVANIA UNINSURED MOTORISTS COVERAGE - STACKED LIMITS

---

Note: This form only needs to be completed if you wish to reject the stacking option for uninsured motorists coverage.

If you have chosen uninsured motorists coverage, your next option is to determine if you wish to stack the limits of this coverage. With "stacking", the limit of liability is determined by adding the uninsured motorists coverage limits for each motor vehicle which covers the injured person as an insured. If you reject "stacking", the total limit of coverage will be the stated limit for the motor vehicle as to which the injured person is insured. You will save on this part of your premium if you reject "stacking". "Stacking" can only be used if you have more than one motor vehicle. Please contact Travelers or your insurance representative for a premium comparison.

To reject stacked limits of uninsured motorists coverage, the insured named first on the application or the declarations must sign and date the rejection of stacked uninsured coverage limits below. If you want to stack this coverage, do not sign this waiver and go to the next page.

---

### REJECTION OF STACKED UNINSURED COVERAGE LIMITS

---

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily rejected the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

X _Tammie D. Bican_
Signature of First Named Insured

X _6-19-2002 /6-21-2002_
Date

## PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE

**Note: This form only needs to be completed if you wish to reject underinsured motorists coverage.**

Underinsured motorist protection is insurance coverage you may purchase that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims. This coverage is optional. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want this coverage, the insured named first on the application or the declarations page must sign and date the rejection of underinsured motorist protection below. If you want to keep this coverage, do not sign this waiver and go to the next page.

## REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver, I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____
**Signature of First Named Insured**

_____
**Date**

Case ID: 190802259

## PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE – STACKED LIMITS

Note: This form only needs to be completed if you wish to reject the stacking option for underinsured motorists coverage.

If you have chosen underinsured motorists coverage, your next option is to determine if you wish to stack the limits of this coverage. With "stacking", the limit of liability is determined by adding the underinsured coverage limits for each motor vehicle which covers the injured person as an insured. If you reject "stacking", the total limit of coverage will be the stated limit for the motor vehicle as to which the injured person is insured. You will save on this part of your premium if you reject "stacking". "Stacking" can only be used if you have more than one motor vehicle. Please contact Travelers or your insurance representative for a premium comparison.

To reject stacked limits of underinsured motorists coverage, the insured named first on the application or the declarations must sign and date the rejection of stacked underinsured coverage limits below. If you want to stack this coverage, do not sign this waiver and go to the next page.

## REJECTION OF STACKED UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

X _Tammie D Brown_
Signature of First Named Insured

X _6/21/202_
Date

Case ID: 190802259

## PENNSYLVANIA SELECTION OF UNINSURED AND/OR UNDERINSURED MOTORISTS COVERAGE LIMITS

Note: This section only needs to be completed if you wish to select uninsured and/or underinsured motorists coverage at limits less than your bodily injury liability limits.

If you elect uninsured and/or underinsured motorists coverage, we are required to offer you these coverages at limits equal to your bodily injury liability limits. If you wish to select uninsured and/or underinsured motorists coverage at limits lower than your bodily injury liability limits, you must complete, sign and date the following.

### Request for Lower Limits of
### Uninsured and/or Underinsured Motorists Coverage

Please make selection below only if you wish to select uninsured and/or underinsured motorists coverage at limits lower than your bodily injury liability limits:

**Uninsured Motorists Coverage**

- [ ] $15,000/30,000
- [ ] $25,000/50,000
- [X] $50,000/100,000
- [ ] $100,000/300,000
- [ ] Other $_____/_____

- [ ] $35,000
- [ ] $50,000
- [ ] $100,000
- [ ] $300,000
- [ ] Other $_____

**Underinsured Motorists Coverage**

- [ ] $15,000/30,000
- [ ] $25,000/50,000
- [X] $50,000/100,000
- [ ] $100,000/300,000
- [ ] Other $_____/_____

- [ ] $35,000
- [ ] $50,000
- [ ] $100,000
- [ ] $300,000
- [ ] Other $_____

I understand that this election will apply to all future renewals, continuations, and changes in my policy unless I notify Travelers in writing of a new election.

X _Tammie D Brown_____     _6/21/20__2002___
Signature of Named Insured                     X Date

## PENNSYLVANIA SELECTION OF COLLISION DEDUCTIBLE

Note: This section only needs to be completed if you wish to select a Collision Coverage deductible below $500.

If you have collision coverage, a $500 deductible is mandatory unless you complete the following waiver.

By signing this waiver, I am rejecting a $500 deductible for collision coverage. I understand that the lower the deductible I select the higher my premium for Collision Insurance will be. I select the following deductibles:

- [ ] 100
- [ ] 200 (not available for all vehicles, see note below)
- [ ] 250

Note: The $200 deductible option is not available for certain vehicle types such as trailers, recreational vehicles, and auto homes and camper bodies equipped with living quarters.

I understand that this election will apply to all future renewals, continuations, and changes in my policy unless I notify Travelers in writing of a new election.

_____     _____
Signature of Named Insured                     Date

PL-2432 Rev. 7-93

## PENNSYLVANIA AUTOMOBILE DISCOUNTS

Note: This form only needs to be completed if you are requesting a driver improvement course credit or if you have passive restraint equipment or anti-theft devices in any of your vehicles.

**DRIVER IMPROVEMENT COURSE CREDIT**
If a named insured age 55 or older has successfully completed a driver improvement course approved by PennDOT, a 5 percent premium credit may be applied to your policy. To receive this credit:

- a certificate of successful completion from an approved course must be provided; and
- the course must have been completed within the last three years.

**PASSIVE RESTRAINT DISCOUNT**
If your vehicle is equipped with passive seatbelts or airbags, you are entitled to a discount on the first party benefits coverage portion of your policy. Passive seatbelts are those which automatically fasten without any action by the driver or front seat passenger.

If you answer yes to any of the following questions, check the proper block and indicate which vehicle(s).

☐ Does your vehicle have passive seatbelts, which automatically fasten without any action by the driver or front seat passenger? Which vehicle(s):_____

☐ Does your vehicle have driver side airbags only? Which vehicle(s): _____

☒ Does your vehicle have both a driver and passenger airbag? Which vehicle(s): 97 /NEON

**ANTI-THEFT DISCOUNT**
If you have an anti-theft device in your vehicle, it may be one that qualifies for a discount on the comprehensive coverage portion of your policy.

If you answer yes to any of the following questions, check the proper block, indicate which vehicle(s) and provide evidence of installation.

☐ Does your vehicle have an alarm system that can be heard at least 300 feet away for at least 3 minutes? Which vehicle(s):_____

☐ Does your vehicle have a device that you manually set that makes the fuel, ignition or starting system inoperative? Which vehicle(s):_____

☐ Does your vehicle have a device that automatically makes the fuel, ignition or starting system inoperative when the ignition is turned off? Which vehicle(s):_____

## FRAUD NOTICE

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

I understand that the coverage selections indicated above shall apply on this policy and all future renewals, continuations and changes in my policy until I notify Travelers in writing of any changes.

| Signature of Named Insured | Date |
|---|---|
| X  *Tammie D. Brown* | X  6-21-2002 |
| Agent  *Gregory A. Hart* | Date  06/21/2002 |

FL-2432  Rev. 7-99

Case ID: 190802259

CHRISTIAN HOEY, ESQUIRE, LLC
Christian J. Hoey, Esquire
Attorney I.D. 70999
50 Darby Road
Paoli, PA 19301                                    Attorney for Plaintiff
610-647-5151

*Filed and Attested by the Office of Judicial Records 18 SEP 2019 01:31 pm M. RUSSO*

---

| | | |
|---|---|---|
| TAMMIE D. BROWN, AS | : | COURT OF COMMON PLEAS |
| ADMINISTRATRIX OF THE | : | |
| ESTATE OF RODNEY BROWN | : | PHILADELPHIA COUNTY, |
| 352 Cassidy Court | : | PENNSYLVANIA |
| Blandon, PA 19510 | : | |
| Plaintiff, | : | AUGUST TERM, 2019 |
| | : | |
| v. | : | |
| | : | No. 02259 |
| TRAVELERS HOME & MARINE | : | |
| INSURANCE COMPANY, d/b/a | : | |
| a/k/a, TRAVELERS | : | |
| 3 Benjamin Franklin Parkway | : | |
| Philadelphia, PA 19102 | : | |

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY:

    Please reinstate the Complaint filed in the above matter.

Date: 9/18/19
                            Christian J. Hoey, Esquire
                            Attorney for the Plaintiff,
                            Tammie D. Brown, as Administratrix of
                            the Estate of Rodney Brown

**EXHIBIT**
**B**

Case ID: 190802259

CHRISTIAN HOEY, ESQUIRE, LLC
Christian J. Hoey, Esquire
Attorney I.D. 70999
50 Darby Road
Paoli, PA 19301
610-647-5151

Filed and Attested by the
Office of Judicial Records
18 ... pm

Attorney for Plaintiff

| | |
|---|---|
| TAMMIE D. BROWN, AS<br>ADMINISTRATRIX OF THE<br>ESTATE OF RODNEY BROWN<br>352 Cassidy Court<br>Blandon, PA 19510<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>TRAVELERS HOME & MARINE<br>INSURANCE COMPANY, d/b/a<br>a/k/a, TRAVELERS<br>3 Benjamin Franklin Parkway<br>Philadelphia, PA 19102 | COURT OF COMMON PLEAS<br><br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br>AUGUST TERM, 2019<br><br>No. 02259 |

## PRAECIPE TO SUBSTITUTE VERIFICATION TO COMPLAINT

TO THE PROTHONOTARY:

Kindly submit the following for substitution:

Plaintiff, Tammie D. Brown's Verification substituted for the current attorney verification.

Date: 9/18/19

　　　　　/s/ Christian Hoey
CHRISTIAN J. HOEY, ESQUIRE
Attorney for Plaintiff,
Tammie D. Brown, as Administratrix of
the Estate of Rodney Brown



EXHIBIT
C

Case ID: 190802259

**VERIFICATION**

I, Tammie D. Brown, hereby verify that the statement made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Date: 9/3/2019

Tammie D Brown

Tammie D. Brown

CHRISTIAN HOEY, ESQUIRE, LLC
Christian J. Hoey, Esquire
Attorney I.D. 70999
50 Darby Road
Paoli, PA 19301
610-647-5151

Filed and Attested by the
Office of Judicial Records
22 ... pm

Attorney for Plaintiff

| | |
|---|---|
| TAMMIE D. BROWN, AS ADMINISTRATRIX OF THE ESTATE OF RODNEY BROWN 352 Cassidy Court Blandon, PA 19510 Plaintiff, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY, PENNSYLVANIA AUGUST TERM, 2019 |
| v. | |
| TRAVELERS HOME & MARINE INSURANCE COMPANY, d/b/a a/k/a, TRAVELERS 3 Benjamin Franklin Parkway Philadelphia, PA 19102 | No. 02259 |

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY:

Please reinstate the Complaint filed in the above matter.

Date: 10-22-19

Christian J. Hoey, Esquire
Attorney for the Plaintiff,
Tammie D. Brown, as Administratrix of
the Estate of Rodney Brown

EXHIBIT
D

Case ID: 190802259

LAW OFFICES OF
# Christian J. Hoey, Esquire, LLC
50 DARBY ROAD
PAOLI, PA 19301-1416

cjhoey@hoeylegal.com
Hoeylegal.com

TELEPHONE (610) 647-5151
FAX (610) 993-8472

October 30, 2019

CORPORATE LITIGATION
HARTFORD

NOV 0 4 2019

RECEIVED AM

**CERTIFIED MAIL & REGULAR MAIL**

Travelers
Attn: Consumer Affairs
One Tower Square
Hartford, CT 06183

Re:   **Tammie D. Brown, as Administratrix of the Estate of Rodney Brown vs.
Travelers Home & Marine Insurance Company d/b/a Travelers
August Term, 2019 - No. 02259
In the Court of Common Pleas of Philadelphia County, Pennsylvania**

Dear Sir/Madam:

Regarding the above-noted matter, kindly be advised of my representation of Tammie D.
Brown pertaining to the Estate of Rodney Brown. Enclosed herein, kindly find a time stamped copy
of Praecipe to Reinstate Plaintiff's Complaint which was filed in Court of Common Pleas of
Philadelphia County, Pennsylvania.

Very truly yours,

Christian J. Hoey

SCANNED

NOV 0 4 2019

CORPORATE LITIGATION

CJH:seh
Enclosure

cc:   Tammie Brown



LEGAL/126390928.v1
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By: Brooks R. Foland, Esquire
ID No. 70102
By:     Allison L. Krupp, Esquire
ID No. 307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA  17011
717- 651-3714/717-651-3510
Fax 717-651-3707
email: brfoland@mdwcg.com/ bebakshi@mdwcg.com
Our File No.  20007-tba BRF
Attorney for Defendant

| | | |
|---|---|---|
| TAMMIE D. BROWN, as | : | COURT OF COMMON PLEAS |
| Administratrix of the Estate of | : | PHILADELPHIA COUNTY, PENNSYLVANIA |
| Rodney Brown | : | |
| | : | August Term, 2019 |
| Plaintiff | : | Case ID 190802259 |
| | : | |
| vs. | : | |
| TRAVELERS HOME & MARINE | : | CIVIL ACTION – LAW |
| INSURANCE COMPANY d/b/a | : | |
| TRAVELERS | : | |
| | : | |
| Defendant | : | |

## ENTRY OF APPEARANCE

   TO THE PROTHONOTARY:

   Kindly enter the appearance of Brooks R. Foland, Esquire, the undersigned on behalf of

Defendant Travelers Home & Marine Insurance Company d/b/a Travelers in the above captioned

case.

Respectfully submitted,


EXHIBIT
tabbies
F

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By: _____

Brooks R. Foland, Esquire
Attorney for Defendant
PA ID# 70102
Suite 201
100 Corporate Center Drive
Camp Hill, PA  17011
Ph. 717-651-3714
Fax:  717-651-3707
Email: brfoland@mdwcg.com

Dated:  November 25, 2019

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Defendant

Signature: _____

Name: Brooks R. Foland, Esquire

Attorney No. (if applicable): 70102

Rev. 12/2017

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By:  Brooks R. Foland, Esquire
ID No. 70102
By:     Allison L. Krupp, Esquire
ID No. 307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA  17011
717- 651-3714/717-651-3510
Fax 717-651-3707
email: brfoland@mdwcg.com/ alkrupp@mdwcg.com
Our File No.  20007-tba BRF
Attorney for Defendant

| TAMMIE D. BROWN, as | : | COURT OF COMMON PLEAS |
| Administratrix of the Estate of | : | PHILADELPHIA COUNTY, PENNSYLVANIA |
| Rodney Brown | : | |
| | : | August Term, 2019 |
| Plaintiff | : | Case ID 190802259 |
| vs. | : | |
| TRAVELERS HOME & MARINE | : | CIVIL ACTION – LAW |
| INSURANCE COMPANY d/b/a | : | |
| TRAVELERS | : | |
| | : | |
| Defendant | : | |

## **CERTIFICATE OF SERVICE**

I, Brooks R. Foland, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby

certify that on November 25, 2019, I served a copy of Defendant's Entry of Appearance being

electronically filed with the Court via United States First Class Mail, postage prepaid, as follows:

Christian J. Hoey, Esquire
50 Darby Road
Paoli, PA  19301

_____
Brooks R. Foland

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By:  Brooks R. Foland, Esquire
ID No. 70102
By:     Allison L. Krupp, Esquire
ID No. 307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA  17011
717- 651-3714/717-651-3510
Fax 717-651-3707
email: brfoland@mdwcg.com/ alkrupp@mdwcg.com
Our File No. 20007-tba BRF
Attorney for Defendant

| | | |
|---|---|---|
| TAMMIE D. BROWN, as | : | COURT OF COMMON PLEAS |
| Administratrix of the Estate of | : | PHILADELPHIA COUNTY, PENNSYLVANIA |
| Rodney Brown | : | |
| | : | August Term, 2019 |
| Plaintiff | : | Case ID 190802259 |
| vs. | : | |
| TRAVELERS HOME & MARINE | : | CIVIL ACTION – LAW |
| INSURANCE COMPANY d/b/a | : | |
| TRAVELERS | : | |
| | : | |
| Defendant | : | |

### ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Allison L. Krupp, Esquire, the undersigned on behalf of

Defendant Travelers Home & Marine Insurance Company d/b/a Travelers in the above captioned

case.

Respectfully submitted,



EXHIBIT
6

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By: _____

Allison L. Krupp, Esquire
Attorney for Defendant
PA ID# 307013
Suite 201
100 Corporate Center Drive
Camp Hill, PA  17011
Ph. 717-651-3510
Fax:  717-651-3707
Email: alkrupp@mdwcg.com

Dated:  November 25, 2019

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Defendant

Signature: _____

Name: Allison L. Krupp, Esquire

Attorney No. (if applicable): 307013

Rev. 12/2017

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By: Brooks R. Foland, Esquire
ID No. 70102
By:      Allison L. Krupp, Esquire
ID No. 307013
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
717- 651-3714/717-651-3510
Fax 717-651-3707
email: brfoland@mdwcg.com/ alkrupp@mdwcg.com
Our File No. 20007-tba BRF
Attorney for Defendant

| | | |
|---|---|---|
| TAMMIE D. BROWN, as | : | COURT OF COMMON PLEAS |
| Administratrix of the Estate of | : | PHILADELPHIA COUNTY, PENNSYLVANIA |
| Rodney Brown | : | |
| | : | August Term, 2019 |
| Plaintiff | : | Case ID 190802259 |
| vs. | : | |
| TRAVELERS HOME & MARINE | : | CIVIL ACTION – LAW |
| INSURANCE COMPANY d/b/a | : | |
| TRAVELERS | : | |
| | : | |
| Defendant | : | |

## **CERTIFICATE OF SERVICE**

I, Allison L. Krupp, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby

certify that on November 25, 2019, I served a copy of Defendant's Entry of Appearance being

electronically filed with the Court via United States First Class Mail, postage prepaid, as follows:

Christian J. Hoey, Esquire
50 Darby Road
Paoli, PA 19301

_____
Allison L. Krupp

## CERTIFICATE OF SERVICE

I, Brooks R. Foland, Esquire, do hereby certify that a true and correct copy of the foregoing was served upon the following via email and regular mail on the date specified below:

Christian Hoey, Esquire, LLC
Christian J. Hoey, Esquire
50 Darby Road
Paoli, PA 19301
*Attorneys for Plaintiff*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

Brooks R. Foland Esquire
*Attorneys for Defendant*

Dated:  11/26/2019

5